THE STATE OF OHIO, APPELLEE, *v*. KETTERER, APPELLANT.

[Cite as *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831.]

*Criminal procedure — Sentencing — Combination of judgment entry and sentencing opinion satisfying Crim.R. 32(C) — No violation of prosecution's duty to disclose evidence relevant to resentencing — Motion to withdraw guilty plea at resentencing — Failure to notify of postrelease control — Remand for resentencing under R.C. 2929.191.*

(Nos. 2007-1261 and 2007-2425 — Submitted March 9, 2010 — Decided August 25, 2010.)

APPEALS from the Court of Common Pleas of Butler County, No. CR2003-03-0309.

_____

**SYLLABUS OF THE COURT**

In cases in which R.C. 2929.03(F) requires the court or panel to file a sentencing opinion, a final, appealable order consists of both the sentencing opinion filed pursuant to R.C. 2929.03(F) and the judgment of conviction filed pursuant to Crim.R. 32(C).

_____

**LANZINGER, J.**

**{¶ 1}** In this case, we are asked to consider a number of issues arising from the resentencing of appellant, Donald Ketterer, who has been convicted of capital and noncapital offenses. We hold that the order appealed from is a final, appealable order, that the *Foster* remedy was properly applied and no *Brady* violation occurred during resentencing, and that the trial court properly denied the motion to withdraw Ketterer's guilty pleas. Because mandatory postrelease

control was not properly imposed, however, we remand the case for the trial court to conduct a hearing under R.C. 2929.191.

### I. Case Background

{¶ 2}   Appellant, Donald J. Ketterer, pleaded guilty to aggravated murder, aggravated robbery, aggravated burglary, grand theft of a motor vehicle, and burglary in connection with the February 2003 death of Lawrence Sanders. In February 2004, a three-judge panel convicted Ketterer as charged and sentenced him to death.   On the noncapital offenses, the three-judge panel imposed a nine-year prison term for Count 2, aggravated robbery, a nine-year prison term for Count 3, aggravated burglary, a 17-month prison term for Count 4, grand theft of a motor vehicle, and a four-year prison term for Count 5, burglary. The sentence for Count 4 was concurrent with the sentences for the other counts, while the sentences for Counts 2, 3, and 5 were consecutive.

{¶ 3}   We affirmed Ketterer's convictions and death sentence on October 25, 2006.  111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 209.  On April 18, 2007, we granted Ketterer's application for reopening his appeal with respect to his claim that appellate counsel had been ineffective by failing to challenge Ketterer's noncapital sentences as a violation of *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.   We then vacated his noncapital sentences and remanded for resentencing.  113 Ohio St.3d 1463, 2007-Ohio-1722, 864 N.E.2d 650.

{¶ 4}   Upon remand, on May 24, 2007, the three-judge panel conducted a resentencing hearing on the noncapital offenses and resentenced Ketterer to the same sentence as originally imposed.  Ketterer appealed as a matter of right to challenge his resentencing (case No. 2007-1261).

{¶ 5}   On November 15, 2007, the panel filed a nunc pro tunc entry to correct errors in the resentencing entry.  Ketterer filed a notice of appeal of the

nunc pro tunc entry (case No. 2007-2425). The state filed a motion to dismiss Ketterer's appeal of the nunc pro tunc entry, and on January 30, 2008, we denied the state's motion and ordered that Ketterer's appeal of the nunc pro tunc entry be consolidated with his appeal challenging his resentencing. 116 Ohio St.3d 1498, 2008-Ohio-290, 880 N.E.2d 97. Ketterer's merit brief raises six propositions of law challenging his resentencing.

## II. Legal Analysis

### A. Requirements for final, appealable orders under R.C. 2929.03(F)

{¶ 6} Because it is potentially dispositive of this case, we first address Proposition of Law II, in which Ketterer states that a trial court's sentencing must be vacated if it does not contain the information required by Crim.R. 32(C). On October 29, 2009, we ordered that the parties file supplemental briefs to address whether the November 15, 2007 nunc pro tunc sentencing entry is a final, appealable order in light of our decision in *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163. Ketterer argues that the trial court's November 7, 2007 nunc pro tunc entry does not comply with *Baker* because it fails to reflect Ketterer's guilty pleas.

{¶ 7} The state responds that because R.C. 2929.03(F) requires courts to file a separate sentencing opinion setting forth the court's specific findings in cases in which the death penalty is imposed, the final, appealable order in Ketterer's case is the combination of the judgment entry of conviction filed in May 2007, the nunc pro tunc entry filed in November 2007, and the sentencing opinion in support of the death penalty filed in February 2004. The state recognizes that the nunc pro tunc entry does not state specifically that Ketterer pleaded guilty but argues that because the 2004 sentencing opinion states that Ketterer "waived his right to a jury and entered a plea of guilty to all charges January 27, 2004," the combination of the nunc pro tunc entry and the sentencing opinion satisfies *Baker*.

{¶ 8} " '[I]n order to decide whether an order issued by a trial court in a criminal proceeding is a reviewable final order, appellate courts should apply the definitions of "final order" contained in R.C. 2505.02.' " *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, ¶ 6, quoting *State v. Muncie* (2001), 91 Ohio St.3d 440, 444, 746 N.E.2d 1092, citing *State ex rel. Leis v. Kraft* (1984), 10 Ohio St.3d 34, 36, 10 OBR 237, 460 N.E.2d 1372. R.C. 2505.02(B) states:

{¶ 9} "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

{¶ 10} "(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment."

{¶ 11} Crim.R. 32(C) sets forth the requirements for a final, appealable order in criminal cases. It states that "[a] judgment of conviction shall set forth the plea, the verdict, or findings, upon which each conviction is based, and the sentence." It further states, "The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk."

{¶ 12} But we must also recognize that Ketterer was also convicted in a capital case. R.C. 2929.03(F) requires the trial court to issue a separate sentencing opinion in addition to the judgment of conviction in cases in which the death penalty may be imposed. The statute provides:

{¶ 13} "The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. * * * For cases in which a sentence

4

of death is imposed for an offense committed on or after January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. The judgment in a case in which a sentencing hearing is held pursuant to this section is not final until the opinion is filed."

**{¶ 14}** In *Baker*, we did not address any interaction between R.C. 2929.03(F) and Crim.R. 32(C). Baker entered a not-guilty plea at his arraignment and, after a jury trial, was convicted of having weapons while under a disability and obstructing official business. The court of appeals had granted the state's motion to dismiss Baker's appeal for lack of a final order because the judgment of conviction did not contain Baker's initial plea of not guilty. *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, ¶ 3. The Ninth District certified a conflict to this court, and we accepted the certified question to determine what must be included in a judgment of conviction to allow it to become a final, appealable order pursuant to Crim.R. 32(C).

**{¶ 15}** The first issue in *Baker* was whether, under Crim.R. 32(C), "the plea, the verdict or findings, and the sentence" must be contained within a single document. We noted that the Twelfth District erroneously interpreted Crim.R. 32(C) when it held that multiple documents were sufficient to meet the rules requirements in *State v. Postway*, 12th Dist. No. CA2002-06-154, 2003-Ohio-2689, 2003 WL 21213409, and we held that "[o]nly one document can constitute a final appealable order." *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, ¶ 17.

**{¶ 16}** The second issue in the case was whether the judgment of conviction must include the plea entered at arraignment. We held that "the judgment of conviction is a single document that need not necessarily include the plea entered at arraignment." Id. at ¶ 1. After analyzing Crim.R. 32(C), we emphasized that "a judgment of conviction is a final appealable order under R.C.

2505.02 when it sets forth (1) the guilty plea, the jury verdict, or the finding of the court upon which the conviction is based; (2) the sentence; (3) the signature of the judge; and (4) entry on the journal by the clerk of court." Id. at ¶ 18. In so holding, we noted that the trial court is "required to sign and journalize a document memorializing the sentence and the manner of the conviction." Id. at ¶ 14.

{¶ 17} We distinguish the present case from *Baker* and agree with the state that in aggravated-murder cases subject to R.C. 2929.03(F), the final, appealable order consists of the combination of the judgment entry and the sentencing opinion. Because R.C. 2929.03(F) requires the court to file a sentencing opinion, *Baker* does not control this case, because *Baker* addressed only noncapital criminal cases, in which a judgment of conviction alone constitutes a final, appealable order. R.C. 2929.03(F) requires that a separate sentencing opinion be filed in addition to the judgment of conviction, and the statute specifies that the court's judgment is not final until the sentencing opinion has been filed. Capital cases, in which an R.C. 2929.03(F) sentencing opinion is necessary, are clear exceptions to *Baker*'s "one document" rule.

{¶ 18} We hold that in cases in which R.C. 2929.03(F) requires the court or panel to file a sentencing opinion, a final, appealable order consists of both the sentencing opinion filed pursuant to R.C. 2929.03(F) and the judgment of conviction filed pursuant to Crim.R. 32(C). Therefore, while the final, appealable order must satisfy the four requirements enumerated in *Baker*, the first requirement — that the final, appealable order include the guilty plea, the jury verdict, or the finding of the court upon which the conviction is based — will be satisfied if either the judgment of conviction or the sentencing opinion includes the guilty plea, jury verdict, or finding of the court upon which the conviction is based.

**{¶ 19}** Ketterer's sentencing opinion states, "The defendant waived his right to a jury and entered a plea of guilty to all charges January 27, 2004. Evidence was presented as to the charges. The three Judge panel returned a verdict of guilty to the One Count of Aggravated Murder and guilty to all three specifications contained in the indictment as well as a verdict of guilty on Count Two, Three, Four and Five of the indictment." The November 2007 nunc pro tunc entry states that the trial court "has considered the record, the charges, the defendant's Guilty Finding by Judges, and findings as set forth on the record and herein." While the court failed to set forth Ketterer's guilty plea in the judgment of conviction, the sentencing opinion states that Ketterer pleaded guilty and satisfies the requirement that the final, appealable order set forth the guilty plea, the jury verdict, or the finding of the court upon which the conviction is based. The sentencing opinion and judgment of conviction combine to form a valid final, appealable order.

### B. The trial court properly applied State v. Foster

**{¶ 20}** In his third proposition of law, Ketterer challenges the application of *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at his resentencing. Specifically, Ketterer argues that retroactive application of *Foster* to his resentencing violates his right to a jury trial, is an ex post facto violation, is a due process violation, and violates the rule of lenity.

**{¶ 21}** Each of Ketterer's arguments was considered and resolved by this court in *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582. In *Elmore*, we held that resentencing pursuant to *Foster* for crimes that were committed before *Foster* does not violate the Sixth Amendment right to a jury trial or the Ex Post Facto or Due Process clauses of the United States Constitution and that a trial court is not required by the rule of lenity to impose a minimum prison term upon resentencing pursuant to *Foster*. Id. at syllabus. *Elmore* is

accordingly dispositive of the challenges raised in Ketterer's third proposition of law.

*C. No Brady violation occurred*

**{¶ 22}** In his fourth proposition of law, Ketterer argues that the three-judge panel improperly denied his motion to provide the defense with exculpatory evidence that was material to sentencing.

**{¶ 23}** Due process requires that the prosecution provide defendants with any evidence that is material to either their guilt or their punishment. *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley* (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (opinion of Blackmon, J.).

**{¶ 24}** In determining materiality, the relevant question "is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley* (1995), 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490. Thus, the rule set forth in *Brady* is violated when the evidence that was not disclosed "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435. "In the end, this standard not only protects defendants; by ensuring a fair trial, it also protects the system of justice as a whole." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 40.

**{¶ 25}** In a motion prior to resentencing, Ketterer requested disclosure of information concerning a police raid on Donald Williams's property 17 days before the homicide, any potential charges pending against Williams and Mary Gabbard at the time, Williams's and Gabbard's history as police informants, evidence linking Williams and Gabbard to the homicide, and any evidence

concerning Ketterer's mental state between the time of the offenses and his arrest. In response, the state asserted that the requested information had already been provided to the defense or was not *Brady* material. The court overruled the defense motion.

{¶ 26} As an initial matter, the state invokes *State v. Chinn* (1999), 85 Ohio St.3d 548, 709 N.E.2d 1166, in arguing that Ketterer's *Brady* claims should be rejected because the evidence could not be presented at his resentencing hearing. In *Chinn*, the court of appeals had remanded a capital defendant's case to the trial court for resentencing because the trial judge had committed errors in his original independent evaluation and in his sentencing opinion. Id. at 562. The trial court reimposed the death penalty, and the court of appeals affirmed. Id. at 563-564.

{¶ 27} On appeal to this court, Chinn claimed that he was denied the right to present new mitigating evidence at his resentencing hearing. Id. at 564. In rejecting this argument, the court stated, "[T]he errors requiring resentencing occurred after the close of the mitigation phase of the trial. Under these circumstances, the trial court is to proceed on remand from the point at which the error occurred." Id. at 565. *Chinn* concluded that the defendant " 'was not entitled to an opportunity to improve or expand his evidence in mitigation simply because * * * [the court of appeals] required the trial court to reweigh the aggravating circumstance and mitigating factors.' " Id., quoting *State v. Chinn* (June 21, 1996), 2d Dist. No. 15009, 1996 WL 338678, at *3.

{¶ 28} Based on *Chinn*, the state argues that Ketterer was not entitled to present evidence at resentencing that could have been presented at his original sentencing hearing but was not. However, Ketterer's case was remanded for resentencing on the noncapital offenses in accordance with *Foster*. A case remanded for resentencing in accordance with *Foster* "anticipates a sentencing hearing de novo, * * * [although] the parties may stipulate to the existing record

and waive the taking of additional evidence." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 37. Thus, we reject the state's reliance on *Chinn*.

{¶ 29} Ketterer raises three specific *Brady* claims.

1. Information on Williams and Gabbard

{¶ 30} First, Ketterer argues that the panel erred when it refused to order that the prosecution provide all information concerning other individuals who were possibly involved in Sanders's homicide. Ketterer asserts that Williams and Gabbard were "persons of interest" during the investigation but that their involvement in the homicide was never disclosed. Ketterer relies on his own February 28 police statement, made two days after his confession, in which he implicated Williams and Gabbard in the murder. In that statement, Ketterer claimed that Williams drove him to Sanders's residence and Gabbard accompanied him inside Sanders's house, where Ketterer killed Sanders. Ketterer claimed that Gabbard helped him look for property inside Sanders's house and that she accompanied him when he stole Sanders's car.

{¶ 31} Before trial, the state provided the defense with the pretrial statements of Williams and Gabbard. Williams's and Gabbard's statements corroborated Ketterer's version of events in his initial confession but provided no evidence that either one of them accompanied Ketterer to the Sanders residence. The state did not provide any additional information concerning the involvement of Williams and Gabbard in Sanders's murder, because there was none.

{¶ 32} Nevertheless, Ketterer claims that the court should have disclosed (1) all information relating to the commission of illegal activities at Williams's business at 706 East Avenue, (2) all documents relating to prior illegal activities of Williams and Gabbard, (3) all documents relating to crimes with which Ketterer was charged in which Williams and Gabbard are mentioned, (4) whether they were working as informants and their history of working with law-enforcement agencies, (5) the potential charges they faced for the raid at 706 East

Avenue, and (6) any consideration they received in return for their cooperation. These *Brady* requests lack merit because the information about Williams's and Gabbard's activities and their criminal record is not material to Ketterer's resentencing.

{¶ 33} However, Ketterer argues that the involvement of other individuals in the offenses was a mitigating or exculpatory factor during his resentencing. In making this argument, Ketterer cites *Lockett v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973, and other capital cases that govern the admissibility of mitigating evidence during a court's consideration of whether to impose the death penalty. However, the statutory mitigating factors set forth in R.C. 2929.04(B)(1) through (B)(7) are not applicable to Ketterer's resentencing for his noncapital offenses.

{¶ 34} The state cites *United States v. Ruiz* (2002), 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586, in arguing that disclosure of the requested material to Ketterer was rendered unnecessary by his guilty pleas. In *Ruiz*, the Supreme Court held that "the Constitution does not require the Government to disclose material *impeachment* evidence prior to entering a plea agreement with a criminal defendant." (Emphasis added.) Id. at 633. The court reasoned that when a defendant pleads guilty he or she forgoes not only a fair trial but also other accompanying constitutional guarantees. Id. at 628–629. *Ruiz* stated that impeachment information is special, as it is "more closely related to the *fairness* of a trial than to the *voluntariness* of the plea." (Emphasis sic.) Id. at 633.

{¶ 35} *Ruiz* supports the state's argument as it pertains to the disclosure of *impeachment* evidence. Information about Gabbard's and Williams's activities at 706 East Avenue related to possible impeachment evidence. Nothing in the record indicates that such evidence would lead to the disclosure of exculpatory evidence as to the noncapital offenses.

{¶ 36} Even assuming that Ketterer was entitled to such information, Ketterer knew about most of this information before his resentencing hearing. See *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 28, fn. 2 (no *Brady* violation occurs where a defendant knows of essential facts permitting him to take advantage of exculpatory information or where evidence is available from another source), citing *United States v. Clark* (C.A.6, 1991), 928 F.2d 733, 738; see also *State v. Iacona* (2001), 93 Ohio St.3d 83, 100, 752 N.E.2d 937, quoting *United States v. Smith Grading & Paving, Inc.* (C.A.4, 1985), 760 F.2d 527, 532 (" 'No due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial' ").

{¶ 37} Ketterer was aware of illegal activities at 706 East Avenue, although no link to these activities was ever established with Sanders's murder. At a hearing to determine support for Ketterer's guilty plea, Gabbard testified that she and Williams were arrested during a drug raid at 706 East Avenue on February 7, 2003, for selling cocaine. Gabbard also admitted that she used and sold cocaine, fenced property, and committed prostitution while staying at 706 East Avenue. The defense was also aware of Gabbard's extensive criminal history.

{¶ 38} In addition, Ketterer knew before pleading guilty that Williams was a confidential police informant and provided information to police that led to Ketterer's arrest for Sanders's murder. The defense was also aware of Williams's prior criminal history and that he had received consideration in exchange for information that he provided to the police.

{¶ 39} Ketterer invokes *Banks v. Dretke* (2004), 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166, to argue that the state's failure to disclose exculpatory evidence applies to his resentencing. In *Banks*, the state had failed to disclose that an essential prosecution witness was a paid police informant. Id. at 675. The state also failed to disclose interviews with another witness, who falsely stated

that his testimony was entirely unrehearsed. Id. Based on these facts, the Supreme Court concluded that Banks had established prejudice from the violation and cause for failing to present his claims in state court because the defendant had reasonably relied on the prosecutor's open-file policy and assertions that everything known to the government had been disclosed. Id. at 698.

{¶ 40} *Banks* is readily distinguishable. Unlike the prosecution in *Banks*, the state disclosed that Williams was an informant who provided police with information that led to Ketterer's arrest. Moreover, Ketterer has not presented any evidence of prosecutorial concealment or that he relied on false statements by the prosecutor.

2. Information on mental and physical condition

{¶ 41} Second, Ketterer claims that the panel erred when it refused to order that the prosecution provide all information in its possession as to his mental and physical condition at the time of the offenses.

{¶ 42} Before the resentencing hearing, Ketterer was either provided or was aware of information the state had regarding his mental and physical condition between the time of the offenses and his arrest. The state had provided Ketterer with the pretrial statements of Williams, Gabbard, and Lisa Lawson that described his mental status on the evening of the murder and the following day. In his statement, Williams said that Ketterer "seemed very shook up" and was still drunk on the evening of February 24. Gabbard said that she sold Ketterer some crack rocks that same evening. Lisa Lawson, a bartender, stated that Ketterer appeared intoxicated when he left the pub on the evening of February 25.

{¶ 43} Ketterer was also aware of police testimony describing his mental and physical condition at the time of his arrest. During the hearing on the motion to suppress, Detective Steve Rogers testified that he smelled alcohol on Ketterer's breath when he was arrested but that he did not think that Ketterer was intoxicated. When Rogers interviewed Ketterer several hours later, Ketterer told

him that he was taking Klonopin as medication.[1]  Detective James Cifuentes also testified that he smelled alcohol on Ketterer's breath at the time of his arrest.  Cifuentes felt that Ketterer was intoxicated but said that he seemed to have control of himself.  Nevertheless, Ketterer suggests that there may be reports from others whom the state did not disclose who witnessed his impairment by alcohol and drugs during his arrest.  However, Ketterer provides nothing to support this conclusory and speculative claim.

{¶ 44} Thus, no *Brady* violation occurred involving the disclosure of information about Ketterer's mental and physical condition, because the defense knew about this information before resentencing.

3.  Information on favorable treatment of Hester and Jasper

{¶ 45} Third, Ketterer argues that the panel erred by refusing to order the state to disclose information pertaining to the favorable treatment offered to Scott Hester and Tyrone Jasper.

{¶ 46} Before his resentencing hearing, Ketterer did not request disclosure of information pertaining to any favorable treatment Hester or Jasper received in the disposition of their criminal charges.  Ketterer's failure to make these requests is a waiver of his present claim.  See *State v. Iacona*, 93 Ohio St.3d at 101, 752 N.E.2d 937 (when a *Brady* violation is uncovered prior to the close of trial, the failure to request a continuance will usually constitute a waiver of the error on appeal).  Nevertheless, these claims also lack merit.

{¶ 47} Hester's testimony related solely to Ketterer's motion to suppress his pretrial statements.  In that motion, Ketterer argued that he was subjected to custodial interrogation at the moment the police asked him to accompany them to the station on the evening of February 25.  Ketterer attempted to develop testimony at the motion hearing that Hester observed Ketterer being taken away in

---

1.  In the competency evaluation, Dr. Hopes stated that Ketterer had a history of being prescribed Klonopin, which is a medication commonly used in the treatment of severe depressive disorders.

handcuffs outside 706 East Avenue. But Hester was a reluctant witness and at first refused to testify. After the court ordered him to testify, Hester stated that he was not going to lie for the defendant.

{¶ 48} The defense called Jason Kristanoff, the defense investigator, who testified that he interviewed Hester in jail and that Hester stated that on the night of February 25, he saw Ketterer being arrested and taken away in handcuffs. While on the stand, Hester retracted the statements he had made to Kristanoff. The court denied the motion to suppress.

{¶ 49} With respect to Jasper, the state informed the defense that Jasper, an inmate in the Butler County jail, was a potential witness. The state provided the defense with a summary of Jasper's criminal record. But Jasper was never called as a witness. During the mitigation hearing, the prosecutor informed the court that Jasper would have been called as a rebuttal witness if the defense had introduced DNA results, which raised the possibility that someone else was involved in committing the offenses.

{¶ 50} Ketterer argues that the state failed to disclose favorable treatment that Hester received following his testimony at the hearing on the motion to suppress and failed to disclose the disposition of pending charges against Jasper.

{¶ 51} The *Brady* claim as to Hester lacks merit because the disposition of charges against him was not material to Ketterer's resentencing. Ketterer became acquainted with Hester while they were both in jail. Yet because Hester had no involvement in Sanders's murder, the robbery and burglary of his house, or the theft of his car, Hester's testimony was relevant only to the motion to suppress and had no bearing on Ketterer's resentencing.

{¶ 52} Similarly, the disposition of charges against Jasper was not material to Ketterer's resentencing, because he too was not involved in the offenses. Jasper's testimony was relevant only as a potential prosecution rebuttal

witness based on what Ketterer appears to have told him about the offenses in jail. Accordingly, information about Jasper had no bearing on Ketterer's resentencing.

{¶ 53} Even assuming that information about Hester and Jasper should have been disclosed, no *Brady* violation occurred, because Ketterer knew about the disposition of charges against both of them. In a motion filed before the resentencing hearing, Ketterer described the charges against Hester and set forth their disposition. In the same motion, Ketterer discussed charges and their disposition against Jasper.

{¶ 54} Based on the foregoing, no *Brady* violation occurred during Ketterer's resentencing.

*D. Appellant's motion to withdraw his guilty pleas was properly denied*

{¶ 55} The fifth and sixth propositions of law address the trial court's denial of Ketterer's motion to withdraw his guilty pleas.

{¶ 56} While the case was on remand for resentencing, Ketterer filed a motion to withdraw his guilty pleas on the basis that (1) his pleas were based on a misunderstanding of the sentence he would receive (i.e., he believed that he would not receive the death penalty), (2) he relied on statutes that have now been declared unconstitutional in *Foster*, (3) the prosecutor suppressed exculpatory evidence, and (4) he received ineffective assistance of counsel.

{¶ 57} Crim.R. 32.1 states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie* (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715.

{¶ 58} Ketterer raises the same grounds raised in the trial court in arguing that the presiding judge erred in denying his motion to withdraw his guilty pleas. He argues that the three-judge panel should have granted his motion to withdraw

his pleas under the standard that such motions should be "freely and liberally granted."

{¶ 59} In response, the state argues that res judicata bars Ketterer's motion to withdraw his guilty pleas because on the first appeal, this court rejected his attacks on his pleas. Res judicata bars the assertion of claims against a valid, final judgment of conviction that have been raised or could have been raised on appeal. *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus. Ohio courts of appeals have applied res judicata to bar the assertion of claims in a motion to withdraw a guilty plea that were or could have been raised at trial or on appeal. See *State v. McGee*, 8th Dist. No. 91638, 2009-Ohio-3374, ¶ 9; *State v. Totten*, 10th App. No. 05AP-278 and 05AP-508, 2005-Ohio-6210, ¶ 7 (collecting cases).

{¶ 60} In Ketterer's first appeal, this court considered most of the claims that Ketterer raised on remand as a basis to withdraw his guilty pleas. We found that Ketterer was adequately informed of his rights before pleading guilty; that his plea was knowingly, voluntarily, and intelligently made; and that his counsel was not ineffective in providing him advice on his guilty pleas. *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 13-14, 75-79, and 80-90. Thus, res judicata was a valid basis for rejecting these claims.

{¶ 61} In addition, the state invokes *State ex rel. Special Prosecutors v. Judges, Belmont Cty. Court of Common Pleas* (1978), 55 Ohio St.2d 94, 97-98, 9 O.O.3d 88, 378 N.E.2d 162, to argue that the court lacked jurisdiction to vacate Ketterer's guilty pleas. In *Special Prosecutors*, this court held that "Crim.R. 32.1 does not vest jurisdiction in the trial court to maintain and determine a motion to withdraw the guilty plea subsequent to an appeal and an affirmance by the appellate court. While Crim.R. 32.1 apparently enlarges the power of the trial court over its judgments without respect to the running of the court term, it does not confer upon the trial court the power to vacate a judgment which has been

affirmed by the appellate court, for this action would affect the decision of the reviewing court, which is not within the power of the trial court to do." Id. at 97-98.

{¶ 62} On appeal, this court affirmed Ketterer's convictions and death sentence. *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 12. Ketterer's appeal was later reopened and his case was remanded for the limited purpose of resentencing him on his noncapital offenses. 113 Ohio St.3d 1463, 2007-Ohio-1722, 864 N.E.2d 650. Under the authority of *Special Prosecutors*, the panel had no authority to consider Ketterer's motion to withdraw his guilty pleas, let alone grant him a new trial.

{¶ 63} Finally, this court's decision in *State v. Boswell*, 121 Ohio St.3d 575, 2009-Ohio-1577, 906 N.E.2d 422, does not apply to the present case. *Boswell* considered the effect of a void sentence on a defendant's motion to withdraw his guilty plea. Unlike the situation in *Boswell*, Ketterer's noncapital sentences are not void. As discussed below, procedures set forth in R.C. 2929.191 apply to remedy any defects in imposing postrelease control because Ketterer was resentenced after July 11, 2006. See *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, ¶ 34.

{¶ 64} Based on the foregoing, the trial court properly denied Ketterer's motion to withdraw his guilty pleas.

*E. Appellant was not properly notified of postrelease control on resentencing*

{¶ 65} In his first proposition of law, Ketterer argues that he must be resentenced on the noncapital offenses because the three-judge panel failed to properly notify him of postrelease control at his resentencing hearing and failed to properly incorporate postrelease control into its resentencing entry. In his additional proposition of law, Ketterer asserts that the panel's nunc pro tunc entry failed to correct these errors.

**{¶ 66}** During the resentencing hearing for the noncapital offenses, Ketterer was notified of postrelease control: "The Court is also going to advise you, sir, and this is assuming that something happens to Count One, that if — in regards to *Count Two and Five*, if you are released after serving that sentence, the Ohio Department of Rehabilitations and Control [sic] will put you on post-release control, mandatory for a period of five years. And if you violated their rules and regulations such that you were convicted of a new crime or if you didn't report to your parole officer they could send you back in increments of 30, 60, 90 days and they could send you back for a total amount of one half of what I have sentenced you to. So we are talking — these sentences were the original sentences of — total up to 22 that means the parole board could give you an additional 11 years on that." (Emphasis added.)

**{¶ 67}** The three-judge panel's judgment entry dated May 29, 2007, states, "As to Count(s) Two, Three, Four and Five: The Court has notified the defendant that post release control is in this case [sic] up to a maximum of years [sic], as well as the consequences for violating conditions of post release control imposed by the Parole Board under Revised Code Section 2967.28."

**{¶ 68}** On November 15, 2007, the panel filed a nunc pro tunc entry providing, "As to Count(s) Two, Three, Four and Five: The Court has notified the defendant that post release control is *Mandatory* in this case up to a maximum of *5 years*, as well as the consequences for violating conditions of post release control imposed by the Parole Board, under Revised Code Section 2967.28." (Emphasis added.)

**{¶ 69}** Effective July 11, 2006, R.C. 2929.191 establishes a procedure to remedy a sentence that fails to properly impose a term of postrelease control. In *State v. Singleton*, 124 Ohio St.3d, 173, 2009-Ohio-6434, 920 N.E.2d 958, paragraph two of the syllabus, this court held: "For criminal sentences imposed on or after July 11, 2006, in which a trial court failed to properly impose postrelease

control, trial courts shall apply the procedures set forth in R.C. 2929.191." Neither of the parties has addressed the application of R.C. 2929.191 as a remedy in this case. However, R.C. 2929.191 applies to Ketterer because his resentencing hearing occurred after July 11, 2006. See, e.g., *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 214.

{¶ 70} Ketterer argues that the trial court failed to notify him orally of postrelease control as to Count Three, aggravated burglary, which is a first-degree felony.[2] In response, the state contends that the judge merely made "an inadvertent slip of the tongue" at the resentencing hearing when the court referred only to "Count Two and Five." The state argues that the court meant to say "Counts Two through Five" when notifying Ketterer of postrelease control. In support of this argument, the state asserts that the court correctly stated that the total prison time was 22 years for all the noncapital counts and stated that "Counts Two through Five * * * are consecutive to Count One."

{¶ 71} However, the court could not have meant Counts Two through Five in imposing mandatory postrelease control because neither Count Four, a fourth-degree felony, nor Count Five, a third-degree felony, subjected Ketterer to mandatory postrelease control under R.C. 2967.28(B) and (C).[3]

{¶ 72} The state argues that any mistake in advising Ketterer of postrelease control as to Count Three should be overlooked because he was still advised that postrelease control was mandatory for five years. *Watkins v. Collins*, 111 Ohio St.3d 425, 2006-Ohio-5082, 857 N.E.2d 78. In *Watkins*, 12 inmates who were incarcerated for violating postrelease control filed for a writ of habeas

---

2. Appellant's brief incorrectly refers to the charge of aggravated burglary as Count Two rather than Count Three.

3. Burglary as charged in Count Five is a third-degree felony. Count Five charged Ketterer with burglary at the crime scene after the murder. Because this offense did not involve any threat or physical harm to a person, it was subject to discretionary rather than mandatory postrelease control. See R.C. 2967.28(B) and (C).

corpus. Id. at ¶ 27. The petitioners argued that the trial courts never properly imposed postrelease control, because the language in their sentencing entries mistakenly included discretionary language concerning their terms of postrelease control. Id. at ¶ 42. This court acknowledged that the journal entries erroneously referred to discretionary, instead of mandatory, postrelease control, but determined that a "reasonable person in the position of any of the petitioners would have had sufficient notice that postrelease control could be imposed following the expiration of the person's sentence." Id. at ¶ 51.

{¶ 73} The petitioners in *Watkins* sought writs of habeas corpus, requiring the petitioners to show that they were entitled to immediate release from incarceration. Because our standard of review in a habeas case differs considerably from our standard of review when considering a death-penalty case on direct appeal to this court, *Watkins* is of little instructional value. More significantly, *Watkins* did not address the procedures set forth in R.C. 2929.191 for correcting mistakes in notifying a defendant of postrelease control. These statutory procedures provide a mechanism for correcting the failure to properly advise Ketterer of postrelease control on Count Three. These statutory procedures must be followed in Ketterer's case because his resentencing occurred after July 11, 2006. Thus, the dissent's reliance upon *Watkins* is misplaced, and the state's argument that any mistakes in notifying Ketterer about postrelease control can be overlooked is rejected.

{¶ 74} Ketterer also contends that the panel's resentencing entry is defective because it failed to state that postrelease control is *mandatory* for *five* years. Ketterer argues that the resentencing entry also incorrectly stated that postrelease control is imposed as to Counts Three and Four, because he was not notified of postrelease control as to Count Three and he was not subject to mandatory postrelease control on Count Four, a fourth-degree felony.

**{¶ 75}** In response, the state argues that the missing language in the resentencing entry was a clerical error that was corrected when the panel filed the nunc pro tunc entry on November 15, 2007. The nunc pro tunc entry added the omitted word "Mandatory" and the missing numeral "5." However, the nunc pro tunc entry continues to state incorrectly that Ketterer was notified of postrelease control on Counts Two, Three, Four, and Five.

**{¶ 76}** In his additional proposition of law, Ketterer challenges the validity of the nunc pro tunc entry. As discussed earlier, R.C. 2929.191(C) requires that a hearing be conducted before a nunc pro tunc entry is journalized to correct a sentence that fails to properly impose a term of postrelease control. Nothing in the record indicates that such a hearing was conducted. Accordingly, the nunc pro tunc entry was ineffective.

**{¶ 77}** The nunc pro tunc entry contains another error, which Ketterer does not raise. The nunc pro tunc entry does not state that Ketterer was informed that if he violated his supervision or a condition of postrelease control, the parole board could impose a maximum prison term of up to one-half of the prison term originally imposed, which here is an aggregate 11 years. See R.C. 2929.19(B)(3)(e). Ketterer was correctly advised of this condition of postrelease control during the resentencing hearing. However, the nunc pro tunc entry incorrectly states, "The defendant is ordered to serve as part of this sentence any term of post release control imposed by the Parole Board, and *any prison term* for violation of that post release control." Thus, the nunc pro tunc entry should be amended to incorporate the correct language of this rule. See R.C. 2929.191(B)(1).

**{¶ 78}** Thus, in contrast to the dissent's characterization of the facts, this is not a case in which the trial court merely misspoke in regard to one point concerning postrelease control. Instead, at least four errors occurred in notifying Ketterer of postrelease control: (1) the trial court orally advised Ketterer that he

22

was subject to five years of mandatory postrelease control as to "Counts Two and Five" when it should have said "Counts Two and Three," (2) the nunc pro tunc entry incorrectly states that Ketterer was notified of postrelease control on Counts Two, Three, Four, and Five, (3) the nunc pro tunc entry does not contain proper language explaining the consequences of a violation of postrelease control, and (4) the trial court issued the nunc pro tunc entry without following the procedures of R.C. 2929.191, which controls in this case. Viewed cumulatively, these errors on the part of the trial court cannot be considered harmless. We have stated that "the court must conduct proceedings in capital cases with a strict level of care that comports with their unique status." *State v. Clinkscale*, 122 Ohio St.3d 351, 2009-Ohio-2746, 911 N.E.2d 862, ¶ 23. Accordingly, while the dissent is correct that it is highly unlikely that Ketterer will ever be subject to postrelease control, trial courts in capital cases must scrupulously comply with the applicable statutes and rules, even those involving postrelease control.

**{¶ 79}** Because the trial court failed to properly impose postrelease control, the case is remanded so that Ketterer may be given the proper terms of postrelease control pursuant to R.C. 2929.191.

### III. Conclusion

**{¶ 80}** We hold that in cases in which a sentencing opinion is required by R.C. 2929.03(F), a final, appealable order consists of both the sentencing opinion and the judgment of conviction filed pursuant to Crim.R. 32(C). We further hold that the first of the four requirements for a final, appealable order enumerated in *Baker* will be satisfied if the sentencing opinion, the judgment of conviction, or preferably both, reflect the guilty plea, the jury verdict, or the finding of the court upon which the conviction is based. Because Ketterer's sentencing opinion sets forth his guilty plea, there is a valid final, appealable order in this case.

**{¶ 81}** Furthermore, we hold that the trial court properly applied the *Foster* remedy in resentencing Ketterer, that no *Brady* violation occurred during

resentencing, and that the trial court properly denied Ketterer's motion to withdraw his guilty pleas. Because the trial court failed to properly impose postrelease control during resentencing, we reverse the judgment and remand the case so that postrelease control may be properly imposed according to R.C. 2929.191.

Judgment reversed

and cause remanded.

PFEIFER, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LUNDBERG STRATTON, J., dissents.

BROWN, C.J., not participating.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 82} The majority holds that the trial court failed to properly impose postrelease control and, therefore, that the case must be remanded so that Ketterer may be given the proper terms of postrelease control pursuant to R.C. 2929.191. I dissent.

{¶ 83} In *Watkins v. Collins*, 111 Ohio St.3d 425, 2006-Ohio-5082, 857 N.E.2d 78, this court acknowledged that the journal entries erroneously referred to discretionary, instead of mandatory, postrelease control, but determined that a "reasonable person in the position of any of the petitioners would have sufficient notice that postrelease control could be imposed following the expiration of the person's sentence." Id. at ¶ 51. Moreover, we noted that the "preeminent purpose of R.C. 2967.28" is that "offenders subject to postrelease control know at sentencing that their liberty could continue to be restrained after serving their initial sentences." Id. at ¶ 52.

{¶ 84} In this case, Ketterer was advised that he was subject to postrelease control, that the duration of that postrelease control would be five years, and that imposition of the postrelease control was mandatory. Therefore, while the trial

court may have misspoken and at one point used the word "and" instead of the word "through," the trial court did comply with the requirement to advise Ketterer that postrelease control was mandatory for five years. Therefore, the preeminent purpose of R.C. 2967.28 was complied with, and no error should be found that warrants reversal.

{¶ 85} In addition, Ketterer was sentenced to death for aggravated murder and to terms of imprisonment for burglary, aggravated burglary, aggravated robbery, and grand theft of a motor vehicle. The term sentences were in addition to his sentence of death. Therefore, he will not ever be subject to postrelease control. Thus, any failure to properly impose postrelease control is also a factor in the harmless-error analysis. I respectfully dissent and would find that any failure to comply with the requirement to notify Ketterer of postrelease control constituted harmless error.

_____

Robin N. Piper, Butler County Prosecuting Attorney, and Michael A. Oster Jr., Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Randall L. Porter, Assistant Public Defender, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, and Seth L. Gilbert and Steven L. Taylor, Assistant Prosecuting Attorneys, urging affirmance for amicus curiae, Ohio Prosecuting Attorneys Association.

_____