[Cite as *State v. Nicholson*, 2018-Ohio-2932.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 105958

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**MIKE NICHOLSON**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-593304-A

**BEFORE:** Stewart, P.J., Boyle, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** July 26, 2018

**ATTORNEY FOR APPELLANT**

Steve W. Canfil
55 Public Square, Suite 2100
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Anthony Thomas Miranda
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, P.J.:

{¶1}   Defendant-appellant Mike Nicholson pleaded guilty to drug trafficking and having a weapon while under disability.   He did not file a direct appeal, but one year after conviction, filed a pro se motion to "vacate or set aside the judgment of conviction or sentence."   That petition claimed that retained trial counsel gave ineffective assistance of counsel by failing to conduct a reasonable investigation of the charges and that retained counsel coerced Nicholson into pleading guilty.   The court denied the petition without a hearing.   Nicholson then filed a pro se Crim.R. 32.1 motion to withdraw his guilty plea.   The motion to withdraw the guilty plea contained four grounds, all of which were related to the performance of retained counsel: that retained counsel failed to investigate the case, that retained counsel failed to consult with Nicholson, that the court failed to advise Nicholson that he had the right to appointed counsel when retained counsel sought to withdraw from the case, and that retained counsel failed to file a written motion to withdraw from the case.   The court denied this motion without a hearing. Nicholson appeals.

{¶2}   The motion to withdraw the guilty plea was filed postsentence, so it could only be granted to "correct manifest injustice."   *See* Crim.R. 32.1.   The term "manifest injustice" is not defined by Crim.R. 32.1, but the most often cited formulation of the phrase was given in *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 1998-Ohio-271, 699 N.E.2d 83, where the Ohio Supreme Court defined a "manifest injustice" as a "clear or openly unjust act."[1]   *Id*. at 208.

---

[1] It is unclear why appellate courts cite *State ex rel. Schneider* as authority for what constitutes a "manifest injustice."   That case did not involve Crim.R. 32.1; it involved an application for a writ of mandamus under Ohio's Sunshine Law and the application of former R.C. 2317.023(C) and its proscription against the disclosure of confidential communications made during court mediation unless "disclosure is necessary in the particular case to prevent a manifest injustice[.]" *Id*. at 207.   The Supreme Court refused to issue the writ, rejecting the relator's argument that he needed access to the confidential mediation communications because he might face future litigation: "The mere possibility that the relator may be involved in future litigation cannot possibly establish the presence of a manifest injustice, as required by the statutory exception."   The court then applied a dictionary

{¶3} It may be better to say that the postsentence withdrawal of a guilty plea is allowed to prevent an obviously unfair result. This has been defined as "some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Hall*, 10th Dist. Franklin No. 03AP-433, 2003-Ohio-6939. *See also State v. Tekulve*, 188 Ohio App.3d 792, 2010-Ohio-3604, 936 N.E.2d 1030, ¶ 7 (1st Dist.) (defining "manifest injustice" as an "extraordinary and fundamental flaw in a plea proceeding."); *State v. Durrette*, 8th Dist. Cuyahoga No. 104050, 2017-Ohio-7314, ¶ 22.

{¶4} Regardless of what definition is used, it is well established that a postsentence withdrawal motion should be granted only in extraordinary cases. *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Id.* at paragraph two of the syllabus. We therefore review a trial court's refusal to grant a postsentence motion to withdraw a guilty plea for an abuse of discretion. *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992).

---

definition defining "manifest injustice" as "a clear or openly unjust act." *Id.* at 208. The Supreme Court's use of the "clear or openly unjust act" definition was relevant to the issue presented in the application for a writ of mandamus; it has little applicability to Crim.R. 32.1 postsentence motions to withdraw guilty pleas.

**{¶5}** In addition, postsentence motions to withdraw guilty pleas are, in essence, postconviction motions to which the doctrine of res judicata applies. Res judicata bars the assertion of claims in a motion to withdraw a guilty plea that were, or could have been, raised in a prior proceeding. *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, ¶ 59. In this context, a prior proceeding consists of a direct appeal or any "postconviction proceedings in which an issue was or could have been raised." *State v. Montgomery*, 2013-Ohio-4193, 997 N.E.2d 579, ¶ 42 (8th Dist.). Thus, we have held that res judicata bars "the assertion of claims in a motion to withdraw a guilty plea that were, or could have been, raised at trial or on direct appeal." *State v. McGee*, 8th Dist. Cuyahoga No. 91638, 2009-Ohio-3374, ¶ 9.

**{¶6}** Nicholson's first basis for seeking withdrawal of his guilty plea is that trial counsel "failed to conduct an adequate pretrial investigation of the case, neglecting to request that the search warrant be unsealed and challenge the validity of the alleged search warrant prior to advising me to plead guilty." This claim undeniably relied on facts outside the record on appeal, so it could not have been raised on direct appeal. *State v. Smith*, 17 Ohio St.3d 98, 101, 477 N.E.2d 1128 (1985), fn. 1. Nevertheless, this same claim was raised in Nicholson's earlier motion to vacate his conviction. Attachment 9A to that petition claimed that "trial counsel was ineffective and did not conduct a reasonable investigation of discovery and neglected to request important documents that could have been beneficial in my defense." And Attachment 9B to the petition claimed that "I do not recall seeing any copy of the search warrant, my attorney told me that it doesn't matter because I signed a 'consent to search.'" This issue was thus raised in the motion to vacate the conviction, so the first basis for relief in the motion to withdraw the guilty plea is res judicata.

**{¶7}** The second basis for seeking withdrawal of the guilty plea is that retained counsel "proved deficient where he failed to visit, return calls, and consult with me to learn my desires to obtain the search warrant and pursue a motion to suppress, prior to making any plea agreement or proceed to trial." This claim overlaps with the claims raised in Attachment 9A to the petition to vacate the conviction, where Nicholson alleged that "my trial attorney never met with me to discuss my case or any plea before trial." In addition, the second basis for relief contained the same argument raised in the motion to vacate the conviction regarding retained counsel's refusal to file a motion to suppress based on Nicholson's consent to search. We also note that Nicholson made this same complaint regarding retained counsel's failure to file a motion to suppress to the trial judge before entering his guilty plea. Retained counsel told the court at the time of the guilty plea that he discussed at length with Nicholson how a motion to suppress evidence based on a lack of consent had no viability. The record shows the issue was not newly discovered and was, in fact, raised prior to the motion to withdraw the guilty plea, so it could have been raised in the motion to vacate the conviction.

**{¶8}** The third basis for seeking withdrawal of the guilty plea is that after orally seeking the removal of retained counsel, the court failed to advise Nicholson that he had the right to appointed counsel and further failed to advise him that retained counsel had to file a written motion to withdraw.

**{¶9}** The record gives no basis for Nicholson's claim that the court was obligated to inform him of his right to appointed counsel. The record shows that at the start of the case, the court assigned counsel for Nicholson. Nicholson then retained his own attorney, but at a later point told the court that "I decided that I want to retain new counsel." The court replied:

You know, [retained counsel] is noted on the file as being retained. You're going to need to get new counsel. I can give you a relatively brief period of time to secure new counsel. This may result in your case being set for trial in a period of time that's going to allow your new counsel sufficient time to get trial scheduled for him.

**{¶10}** The court told Nicholson that it would continue trial for one month in order to give him time to find another attorney. In response to retained counsel's remark that "I thought I would be off the case today[,]" the court told retained counsel to file a motion to withdraw. Retained counsel told the court that "I gave him the card of at least one lawyer. I don't know if he will use it, but I told him that I will turn his file over to his new lawyer and he should get a new lawyer as soon as possible." When the court convened one month later, Nicholson appeared with the same previously retained counsel, who had not filed a motion to withdraw. The court noted that retained counsel was appearing despite Nicholson having expressed concerns about retained counsel's representation. Nicholson told the court that he had been trying to hire a new attorney, but one attorney turned the case down and several other attorneys did not show for scheduled appointments.

**{¶11}** Nothing in the record indicates that from the time Nicholson retained counsel to the time that he sought to replace retained counsel, his financial situation had changed. Nicholson specifically told the court that he could not retain a new attorney because those attorneys he contacted expressed a lack of interest, either directly or indirectly by failing to show for scheduled appointments. Nicholson did not give the court any reason to think that he could not retain new counsel for want of ability to pay. With the seeming ability to pay for his own attorney, the court had no obligation to inform Nicholson of his right to appointed counsel. *See Brown v. Maxwell*, 2 Ohio St.2d 153, 154, 207 N.E.2d 374 (1965); *State v. Scott*, 7th Dist. Mahoning No. 13 MA 47, 2014-Ohio-2993, ¶ 21.

{¶12}   Even if the record could plausibly support an assertion that Nicholson should have been advised of his right to appointed counsel, he could have raised that issue on a direct appeal from the guilty plea.  *State v. Hacker*, 12th Dist. Butler No. CA87-10-138, 1988 Ohio App. LEXIS 515, 3 (Feb. 15, 1988) ("A denial of an indigent criminal defendant's constitutional right to appointed counsel is reviewable on direct appeal in Ohio.").  In addition, Nicholson could have raised the same claim in his petition to vacate his conviction.  In Attachment 10B to the petition to vacate the conviction, Nicholson stated that he wanted retained counsel withdrawn "after disagreements and feeling that he was ineffective."  Nicholson conceded that the court gave him additional time to retain new counsel and that the court specifically found Nicholson stated,  "I was unable to contact and retain new counsel" and was told that retained counsel was "technically" still his attorney.  These facts would have been sufficient to permit review on direct appeal to the same extent as argued in the motion to withdraw the guilty plea.

{¶13} The fourth basis for seeking withdrawal of the guilty plea is that retained counsel "failed to file a motion to withdraw as counsel after agreeing to be off the case and being instructed by the trial court to do so," and that Nicholson was "later induced to continue with counsel."  Even if this claim raised matters outside the record on direct appeal, it was raised in Attachment 10B of the petition to vacate the conviction based on Nicholson's assertion that after seeking to retain new counsel, he next appeared in court and was told that retained counsel was "technically" still his attorney.   It is res judicata.

**{¶14}** Even if we were to reach the merits of Nicholson's fourth claim, we would reject it. While it is true that retained counsel did not file a motion to withdraw, it is equally true that retained counsel continued to represent Nicholson. As explained by retained counsel, Nicholson's conversations with other attorneys yielded him nothing. In the interim, retained counsel went over court records with Nicholson and explained that Nicholson "had been given some wrong information by records he obtained and attorneys he may have talked to with regard to the search warrant." Retained counsel told the court that "we're here today to take a plea, Judge. I will stand in for him. I've talked to him today, briefly. After our conversation, he does realize that I was correct, and maybe he was given some bad information. So we're going to take a plea." The record shows that by agreeing to have retained counsel represent him during the plea hearing, Nicholson waived any argument relating to retained counsel's failure to file a request to withdraw.

**{¶15}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, PRESIDING JUDGE

MARY J. BOYLE, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR