**[Cite as *State v. Bickerstaff*, 2025-Ohio-4567.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

        Appellee

v.

Marc Bickerstaff

        Appellant

Court of Appeals No.   {48}L-25-00057
{48}L-25-00058

Trial Court No.  CR0202201841
CR0202201443

**DECISION AND JUDGMENT**

Decided: September 30, 2025

\* \* \* \* \*

Julia R. Bates, Lucas County Prosecuting Attorney, and,
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Marc Bickerstaff, pro se.

\* \* \* \* \*

**MAYLE, J.**

{¶ 1} The defendant-appellant, Marc Bickerstaff, appeals a February 21, 2025 order of the Lucas County Court of Common Pleas denying his motion to withdraw his guilty pleas in two consolidated cases, Nos. CR-2022-1443 and CR-2022-1841. For the following reasons, we affirm.

# I. Background

{¶ 2} In case No. CR-2022-1443, the State alleged that Bickerstaff robbed a Huntington Bank branch and two 7-Eleven stores on or about March 11-12, 2022. Following the incident, on March 22, 2022, Bickerstaff was indicted for one count of robbery, a violation of R.C. 2911.02(A)(2) and (B), a felony of the second degree; and two counts of aggravated robbery, violations of R.C. 2911.01(A)(1) and (C), each a felony of the first degree. Each count also included a repeat offender specification pursuant to R.C. 2941.149.

{¶ 3} On May 24, 2022, a few months after the first indictment, Bickerstaff was once again indicted by a Lucas County Grand Jury for one count of robbery, a violation of R.C. 2911.02(A)(2) and (B), a felony of the second degree. In this case, Bickerstaff was accused of robbing a Kroger store on May 10, 2022. This case was assigned case No. CR-2022-1841.

{¶ 4} Originally, Bickerstaff pled not guilty to all charges. Although the cases were not consolidated by a trial court order, comprehensive plea negotiations resulted in a combined plea hearing on July 20, 2022. At that time, Bickerstaff changed his plea in both cases. In case 1443, Bickerstaff pled guilty to one count of robbery, a violation of R.C. 2911.02(A)(2) and (B), and two amended counts of the lesser-included offenses of robbery, violations of R.C. 2911.02(A)(2) and (B). In exchange, the state agreed to nolle prosequi the three R.C. 2941.149 specifications at sentencing. In case 1841, Bickerstaff

2.

pled guilty to one count of the lesser-included offense of robbery, a violation of R.C. 2911.02(A)(3) and (B). Bickerstaff also agreed to pay restitution to Kroger.

{¶ 5} In a combined sentencing hearing on August 17, 2022, for case 1443, the trial court ordered Bickerstaff to serve a mandatory minimum term of six years in prison and a maximum indefinite term of nine years for each of the three offenses. These sentences were to be served concurrently to one another. The trial court additionally ordered Bickerstaff to pay restitution of $340 to Huntington Bank and of $160 to 7-Eleven. In case 1841, the trial court ordered Bickerstaff to serve a three-year prison term consecutively to his sentence in case 1443. The trial court additionally ordered Bickerstaff to pay restitution of $2,028.95 to Kroger. As a result of both sentences, Bickerstaff was to serve an aggregate prison term of minimum nine years with an indefinite maximum of nine years.

{¶ 6} On June 5, 2023, this court granted Bickerstaff's motion to file delayed appeals in case 1443, assigned appellate case No. L-23-1147, and in case 1841, assigned appellate case No. L-23-1013. This court subsequently consolidated both appeals. On appeal, Bickerstaff raised one assignment of error regarding the trial court's assignment of consecutive sentences. Bickerstaff argued that he was non-violent and remorseful, and only committed the offenses due to his ongoing drug addiction. We affirmed the trial court's judgments because Bickerstaff did not prove that the trial court's consecutive-sentence findings were clearly and convincingly not supported by the record under R.C.

3.

2953.08(G)(2). *State v. Bickerstaff*, 2024-Ohio-871 (6th Dist.). Bickerstaff did not appeal this decision.

{¶ 7} Following his direct appeal, on December 23, 2024, Bickerstaff filed a motion to withdraw his guilty plea in the trial court. In this motion, Bickerstaff argued that he was unaware that his sentence included mandatory prison time and that he never would have entered into a guilty plea had he known that he could not receive earned credit, apply for judicial release, and was not amenable for community control during that time.

{¶ 8} The trial court denied the motion in an order dated February 21, 2025. In its denial, the trial court found that "[f]irst, [Bickerstaff] could have appealed these issues, but did not. Second, the record indicates [Bickerstaff] is mistaken about the facts upon which his instant motion relies. Third, the instant motion comes ~2 ½ years after he was sentenced; he offers no explanation as to why only now he has become confused or misled." Bickerstaff appealed to this court presenting one assignment of error for our review:

The trial court erred denying Appellant's post-sentence motion to withdraw guilty plea.

## II. Law and Analysis

{¶ 9} Bickerstaff argues that the trial court should have granted his post-sentence motion to withdraw guilty plea because his guilty plea was not knowing, intelligent, or voluntary. He contends that the two plea agreement forms are confusing and that when he

4.

discussed this confusion with his trial counsel, counsel informed him that he would not receive mandatory time on any of his charges. Furthermore, Bickerstaff takes issue with the sentencing judgment entries' "contradicting statements" explaining the possibilities for how he can reduce his sentence. Bickerstaff argues that he would not have entered his pleas if he knew that he had no possible avenue for earned credit or he would not be amenable for judicial release or community control.

{¶ 10} Crim.R. 32.1 governs the withdrawal of a plea of guilty or no contest and provides that such motion "may be made only before sentence is imposed" however, "a trial court may grant a defendant's post-sentence motion to withdraw a guilty plea to 'correct a manifest injustice.'" *State v. Straley*, 2019-Ohio-5206, ¶ 13, citing Crim.R. 32.1. A "'manifest injustice' is a clear or openly unjust act, … and relates to a fundamental flaw in the plea proceedings resulting in a miscarriage of justice." (Citations omitted.) *Id.* at ¶ 14. The term "has been variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases." *Id.,* quoting *State v. Smith*, 49 Ohio St.2d 261, 264 (1977). A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice. *Id.,* citing *Smith* at paragraph one of the syllabus.

{¶ 11} An appellate court reviews a trial court's decision on a motion to withdraw a plea under an abuse-of-discretion standard. *Smith*, at 264. The term "abuse of discretion" implies that the court's attitude is "unreasonable, arbitrary or unconscionable." (Citations omitted.) *State v. Adams,* 62 Ohio St.2d 151, 157 (1982).

5.

## A. Bickerstaff's Argument is Barred Under the Doctrine of Res Judicata

{¶ 12} Claims submitted in support of motions filed pursuant to Crim.R. 32.1 are subject to the doctrine of res judicata. *State v. Cain*, 2021-Ohio-1841, ¶ 11 (6th Dist.), citing *State v. Davis*, 2020-Ohio-4539, ¶ 25 (6th Dist.). Generally, res judicata bars a defendant from raising claims in a Crim.R. 32.1 post-sentencing motion to withdraw a guilty plea that he previously raised, or could have raised, on direct appeal. *Straley,* 2019-Ohio-5205, ¶ 23, citing *State v. Ketterer*, 2010-Ohio-3831, ¶ 59.

{¶ 13} Beyond asserting that he did not find out that he was ineligible for earned credible and early release until he arrived at his current institution and inquired into programs that could impact his earned credit, Bickerstaff does not address the trial court's first finding that he could have appealed this issue during his direct appeal and failed to do so. The State, however, contends that Bickerstaff's arguments are barred under the doctrine of res judicata. We agree.

{¶ 14} Bickerstaff did not argue on direct appeal that he should have been permitted to withdraw his plea or that his plea was somehow invalid—instead he focused on his consecutive sentences.[1] While he now argues that he did not make a knowing, intelligent, and voluntary guilty plea, his arguments rely exclusively on information made

---

[1] The fact that Bickerstaff *could have* raised this issue but did not is made even more apparent when reviewing the docketing statement submitted by Bickerstaff on January 23, 2023 for his direct appeal. In the probable issues for review section, Bickerstaff included "[w]hether Appellant (sic) plea was voluntary, knowingly, and intelligently made."

available to him in the plea and sentencing phases of his original case. As examined more thoroughly in the substantive analysis below, there is nothing in the record to suggest that Bickerstaff could not have raised this issue on direct appeal. As such, the trial court properly concluded that Bickerstaff's argument relating to the voluntariness of his plea is barred by his failure to raise the issue in his direct appeal.

**B. Bickerstaff Fails to Show That His Guilty Plea Was Not Knowingly, Intelligently, and Voluntarily Made**

{¶ 15} Even if Bickerstaff's claim is not barred by res judicata, the record is clear that the trial court correctly and adequately advised Bickerstaff that the offenses he was pleading to required a mandatory prison sentence.

### 1. The Plea Hearing and Agreement

{¶ 16} Beginning with the July 20, 2022 plea hearing, in accepting Bickerstaff's change of plea, the trial court took great lengths to ensure that he was capable of making such a decision, and then explained the maximum penalties that Bickerstaff was facing and how those penalties layered with each other. In response to the court's questions, Bickerstaff answered that he was not under the influence of any medication, drugs or alcohol, that he was clearheaded, that he had never suffered from a mental illness, that he was not threatened or been promised anything in exchange for taking the plea, that he had gone over his questions with his attorney, and that he understood the effect of a guilty plea was a complete admission to the charges.

{¶ 17} After confirming that Bickerstaff was proceeding voluntarily, the trial court began inquiring about possible sentences which led to the following exchange:

7.

The court: Let's go over the possible maximum penalties, okay. In each of the second degree felony offenses that you're pleading to and there's three of them, do you understand that you face a maximum potential penalty of up to – of rather two, three, four, five, six, seven or eight years, *whatever number I pick in that range is mandatory*, and in addition you must serve an additional 50 percent of the number that I choose as an indefinite period attached to that case?

Bickerstaff: Yes, I do understand. Your Honor. (Emphasis added.)

{¶ 18} The court then went on to provide Bickerstaff with examples of maximum penalties. During this time, the court repeatedly asked Bickerstaff if he understood and had him engage in the calculation of his own potential sentences:

The court: You have three cases here, but I can only impose one indefinite sentence on all three of them in case 22-1443. Do you understand that?

Bickerstaff: Yes.

The court: So if I maxed you out on that case and I gave you eight years on count one, eight years on count two, eight years on count three, what's eight times three?

Bickerstaff: That's twenty-four.

The court: Now I can only give you one maximum indefinite sentence on all three of those. So your maximum exposure would be not only the twenty-four years but 50 percent of that eight. Fifty percent of eight is four. Twenty-four plus four is twenty-eight. Following me or do you want me to go through that?

Bickerstaff: That's fine.

The court: Okay. So your maximum total exposure on that case is up to twenty-eight years. If I max and stack everything, it's up to twenty-eight years. Okay. Twenty-four of the basic sentence, stated sentence, plus the four-year indefinite tail.

Now on the other case it's a little easier. Under 22-1841, that's the third degree felony, that's punishable by up to sixty

months, five years, in prison on that case. Do you understand that?

Bickerstaff: Yes.

The Court: Okay. So if I were to combine them all and make them all consecutive, that would be thirty-three potential years; twenty-nine of which would be the underlying sentence, four of which would be the indefinite part. Now that's only if I max them. I have to tell you what the maximum is…

{¶ 19} Following the hearing, Bickerstaff signed two plea agreement forms—one for case 1443 and one for case 1841. Bickerstaff characterizes the two plea agreements as contradictory. However, when looking at them in conjunction with the explanations provided during the plea hearing, the two forms align with the expectations set by the trial court.

{¶ 20} First, the plea form for case 1443 states: "I understand the MAXIMUM penalties COULD be: a maximum **indefinite** prison term of **28 years** of which **2,3, 4, 5, 6,7, or 8 year minimum term, plus an additional 50% of the term imposed** is mandatory, during which I am NOT eligible for judicial release or community control. The maximum fine possible is **$45,000** of which **$-0-** is mandatory." (Emphasis in original.)

{¶ 21} Next, the plea form for case 1841 states, "I understand the MAXIMUM penalties COULD be: a maximum basic prison term of **60 months** of which **-0-** is mandatory, during which I am ~~NOT~~ eligible for judicial release or community control. The maximum fine possible is **$10,000.00** of which **$-0-** is mandatory." (Emphasis in original.)

9.

{¶ 22} Bickerstaff argues that the two forms contradict each other, however, case 1443 included the more serious charges against him, and because of that, as explained by the trial court, required mandatory time while case 1841, the lesser-included charge, did not. We find that the two forms do not contradict each other, rather they reflect the two separate, yet related sentencing schemes faced by Bickerstaff in the two cases.

**2. The Sentencing Hearing and Judgment Entry**

{¶ 23} Turning to his sentencing, Bickerstaff further argues that the Journal Entries made clear that "the trial court never once notified [him] whether or not he was amenable to community control or judicial release in case No. CR2022-1443" and that the entry contradicts itself by providing notice that he may be eligible for a sentence reduction.

{¶ 24} Even if Bickerstaff finds the Journal Entries unclear or contradictory about his eligibility for community control and/or judicial release, the trial court was incredibly clear about his eligibility at the August 17, 2022 sentencing hearing. The court first provided Bickerstaff with his sentences:

> The court: On case 1443, defendant is subject or is sentenced, rather, to minimum stated term of six years and a maximum indefinite term of nine years. All of those are ordered to be served concurrently with one another and all of them are mandatory under 2929.13(F)(6).
>
> And in case 1841, the defendant is sentenced to a term of 36 months of imprisonment which shall be served consecutively to the three concurrent robberies in 1443 as the defendant was awaiting trial when the new offense was committed.

10.

**{¶ 25}** The court went on to explain how those sentences related to a potentially reduced sentence:

> The court: [Y]ou may be eligible to earn or to reduce your sentence *at least on the non-mandatory part in case 1841* by two different methods. First, earned credit. You – which shall not exceed 8 percent of your total stated prison term. And the second way is under earned reduction which incentivizes good behavior in the penitentiary. For those individuals sentenced to an indefinite term, it allows the prison to grant a reduction on non-mandatory again of between 5 and 15 percent for exceptional conduct or adjustment to incarceration. If they recommend a reduction, there's a rebuttable presumption that I would grant that and I'd have to have a hearing to determine whether to grant it or not an that presumption can be rebutted. (Emphasis added.)

**{¶ 26}** Later in the hearing, defense counsel clarified some of this with the trial judge in the following exchange:

> Defense: Judge, just for his knowledge, on 22-1841, would the court
> Counsel consider a motion for judicial release at the appropriate time?
>
> The court: The court will consider. I will make no guarantees about granting it, but part of what I look at, Mr. Bickerstaff, when you start that second sentence because the first sentence I'm going to order to go first, *the mandatory one* and then I'm going to order that the second one, the later one go second. (Emphasis added.)

**{¶ 27}** Following this hearing, the court submitted two judgment entries—one in case 1443 and one in case 1841. The relevant part of the entry in case 1443 includes the following:

> It is ORDERED that defendant serve a stated minimum prison term of 6 years which is a mandatory term and a maximum indefinite prison term of 9 years as to count 1, the defendant is to serve a stated minimum prison term of 6 years which is a mandatory term and a maximum indefinite prison term of 9 years as to count 2 and defendant to serve a stated minimum prison term of

11.

6 years which is a mandatory term and a maximum indefinite prison term of 9 years as to count 3. The sentences are ordered to be served concurrently to each other but consecutive to case number 22-1841.

{¶ 28} In case 1841, the relevant language simply states that, "[i]t is ORDERED that defendant serve a term of 36 months in prison… [T]his case to run consecutive with case number 22-1443."

{¶ 29} Although Bickerstaff claims that his plea was not knowingly, intelligently, and voluntarily made because he would not have pled had he known that he was subject to a mandatory sentence, the record does not support that assertion. During the plea and sentencing phases, the trial court was clear that whatever minimum term Bickerstaff was sentenced to in case 1443—which ultimately was six years to be served concurrently in all three charges—would also be mandatory. Additionally, the trial court was clear that the indefinite sentence and sentence imposed in case 1841 would not be mandatory and would be served after the mandatory term of years. The trial then correctly explained the ways that Bickerstaff could become eligible for a reduced sentence "at least on the non-mandatory part in case 1841" given that the latter half of his sentence is non-mandatory.

### III. Conclusion

{¶ 30} For the foregoing reasons, we find that the trial court did not abuse its discretion when it denied Bickerstaff's motion to withdraw his guilty plea and as such, we find Bickerstaff's argument not well-taken.

**{¶ 31}** Accordingly, we affirm the February 21, 2025 judgment of the Lucas County Court of Common Pleas. Bickerstaff is ordered to pay any costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                                   _____
JUDGE

Myron C. Duhart, J.

_____
Charles E. Sulek, P.J.                                   JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.