[Cite as *State v. O'Brien*, 2026-Ohio-1173.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                          Court of Appeals No. {87}WD-23-055

     Appellee                                        Trial Court No. 2019 CR 0485

v.

Kelly O'Brien                                         **DECISION AND JUDGMENT**

     Appellant                                       Decided:

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**SULEK, J.**

{¶ 1} Appellant Kelly O'Brien appeals the judgment of the Wood County Court of

Common Pleas, which denied his Crim.R. 32.1 post-sentence motion to withdraw his

guilty plea. For the following reasons, the trial court's judgment is affirmed.

**I. Factual Background and Procedural History**

{¶ 2} On October 28, 2019, O'Brien pleaded guilty to two counts of aggravated

theft of $1,500,000 dollars or more in violation of R.C. 2913.02(A)(3) and (B)(2),

felonies of the first degree, and one count of engaging in a pattern of corrupt activity in

violation of R.C. 2923.32(A)(1) and (B)(1), a felony of the first degree. The charges

arose from O'Brien's conduct of buying and selling vehicles through his company known as K & G Auto. O'Brien often purchased vehicles with checks from various bank accounts that did not have sufficient funds. To cover those checks, he recruited and defrauded investors in what the State described as "a Ponzi scheme."

{¶ 3} On January 6, 2020, the trial court sentenced O'Brien to concurrent 10-year prison terms on the counts of aggravated theft, to be served consecutively with an 8-year prison term on the count of engaging in a pattern of corrupt activity, for a total prison term of 18 years. He was further ordered to pay a total of approximately $16 million in restitution to five different victims.

{¶ 4} O'Brien timely appealed his convictions. On appeal, he argued (1) that his consecutive sentences were contrary to law, (2) that the trial court committed plain error in imposing restitution without supporting documentation, and (3) that his trial counsel was ineffective for stipulating to the restitution order in lieu of an evidentiary hearing. On November 5, 2021, this court found his assignments of error not well-taken and affirmed the trial court's judgment in *State v. O'Brien*, 2021-Ohio-4037 (6th Dist.).

{¶ 5} Ten months later, on September 1, 2022, O'Brien filed a pro-se App.R. 26(B) application to reopen his appeal. In support, O'Brien argued that his appellate counsel was ineffective for failing to raise two additional assignments of error: (1) "Trial counsel rendered ineffective assistance by failing to move for the disqualification of the trial judge due to her present economic interest in the outcome of the case;" and (2) "Appellant received ineffective assistance of counsel when trial counsel convinced appellant to plead guilty to a charge that was not supported by sufficient evidence,

2.

thereby rendering his plea 'unknowing.'" On October 5, 2022, this court denied O'Brien's application to reopen, finding that it was untimely and O'Brien did not establish good cause for the delay. O'Brien attempted a further appeal to the Ohio Supreme Court, which declined to accept jurisdiction.

{¶ 6} Subsequently, on May 15, 2023, O'Brien filed his pro se Crim.R. 32.1 motion to withdraw his guilty plea in the trial court. In his motion, he argued that the State could not have proven the element of an "enterprise" for the charge of engaging in a pattern of corrupt activity, and that his trial counsel was ineffective for allowing him to plead guilty to that charge. The State opposed O'Brien's motion, arguing that the trial court lacked jurisdiction to address it pursuant to the rule in *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97 (1978). Alternatively, the State asserted that O'Brien's arguments were barred by res judicata.

{¶ 7} The trial court denied O'Brien's post-sentence motion to withdraw his guilty plea on August 29, 2023. It reasoned that O'Brien was, in fact, involved in an "enterprise." It further reasoned that his arguments were barred by res judicata.

{¶ 8} O'Brien did not timely appeal the trial court's August 29, 2023 judgment. Instead, on November 3, 2023, he filed a motion for leave to file a delayed appeal. Relying on *Special Prosecutors*, this court reasoned that the trial court did not have jurisdiction to rule on O'Brien's motion to withdraw his guilty plea, and the August 29, 2023 judgment was therefore void. Because no appeal can be taken from a void judgment, this court denied his motion for leave to file a delayed appeal.

3.

{¶ 9} O'Brien then moved for reconsideration of the order denying his motion for leave to file a delayed appeal. He argued that recent appellate jurisprudence demonstrated that *Special Prosecutors* no longer applied, and the trial court *did* have jurisdiction to consider his motion to withdraw his guilty plea. He further sought to certify a conflict with the Eighth District in *State v. Walton*, 2023-Ohio-2879 (8th Dist.), and the Tenth District in *State v. Enyart*, 2023-Ohio-3373 (10th Dist.).

{¶ 10} On January 27, 2025, following supplemental briefing that discussed, inter alia, *Walton*, *Enyart*, *State v. Davis*, 2011-Ohio-5028, and *State ex rel. Davis v. Janas*, 2020-Ohio-1462, this court granted O'Brien's motion for reconsideration, denied his motion to certify a conflict as moot, and granted him leave to file his delayed appeal.

## II. Assignment of Error

{¶ 11} O'Brien asserts one assignment of error for review:

> 1. The trial court erred in denying Mr. O'Brien's motion to withdraw his guilty plea without an evidentiary hearing as he alleged facts which, if true, demonstrate a manifest injustice.

## III. Analysis

{¶ 12} Because it determines the outcome of this case, this court will begin and end its analysis with the State's argument that the trial court lacked jurisdiction to substantively address O'Brien's post-affirmance motion to withdraw his guilty plea.

{¶ 13} For several decades, *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97 (1978), was well-settled controlling precedent in Ohio. In that case, the defendant Ronald Asher pleaded guilty to the charge of murder. The trial court accepted his plea, resulting in his conviction. Asher appealed his

4.

conviction, arguing that his guilty plea was not voluntarily made. The court of appeals affirmed the conviction, and in so doing held that Asher's plea was knowing, intelligent, and voluntary. *State v. Asher*, 1976 WL 188541 (7th Dist. Mar. 3, 1976).

{¶ 14} Several months later, Asher filed a Crim.R. 32.1 motion to withdraw his guilty plea in the trial court. The trial court held an evidentiary hearing and granted the motion. The State failed to appeal the trial court's judgment granting the motion to withdraw the guilty plea. Following the withdrawal of Asher's plea, the matter was set for trial. Prior to the start of trial, however, special prosecutors who had been appointed by the trial court filed a complaint for a writ of prohibition to prevent the trial court from proceeding with the trial based upon the alleged lack of jurisdiction of the trial court to permit the withdrawal of Asher's guilty plea. *Special Prosecutors* at 94. The appellate court denied the writ of prohibition and the matter was appealed to the Ohio Supreme Court. *Id.* at 95.

{¶ 15} The Ohio Supreme Court identified the issue before it as "whether the trial court exceeded its jurisdiction in vacating [Asher's] plea of guilty subsequent to the Court of Appeals' affirmance of its prior judgment convicting [Asher] on the basis of his guilty plea." *Id.* at 96. Asher argued that the trial court had jurisdiction pursuant to Crim.R. 32.1 to hear and determine the motion to withdraw the guilty plea. The special prosecutors argued that Crim.R. 32.1 does not confer jurisdiction upon the trial court because (1) jurisdiction was vested in the Court of Appeals, and (2) the Court of Appeals' decision on the voluntariness of the plea became the law of the case and the trial court was bound to follow it.

5.

{¶ 16} In its decision reversing the denial of the writ, the Ohio Supreme Court identified that "[n]either the Ohio Rules of Appellate Procedure nor the Ohio Rules of Criminal Procedure are explicit as to what effect the taking of an appeal has on the jurisdiction of the lower court." *Id.* at 96-97. It noted that the general rule is that "the trial court loses jurisdiction to take action in a cause after an appeal has been taken and decided." *Id.* at 97. But it recognized that "the trial court does retain jurisdiction over issues not inconsistent with that of the appellate court to review, affirm, modify or reverse the appealed judgment, such as the collateral issues like contempt, appointment of a receiver and injunction." *Id.* In the case before it, however, it found that "the trial court's granting of the motion to withdraw the guilty plea and the order to proceed with a new trial were inconsistent with the judgment of the Court of Appeals affirming the trial court's conviction premised upon the guilty plea." *Id.* It reasoned,

> The judgment of the reviewing court is controlling upon the lower court as to all matters within the compass of the judgment. Accordingly, we find that the trial court lost its jurisdiction when the appeal was taken, and, absent a remand, it did not regain jurisdiction subsequent to the Court of Appeals' decision.
>
> Furthermore, Crim.R. 32.1 does not vest jurisdiction in the trial court to maintain and determine a motion to withdraw the guilty plea subsequent to an appeal and an affirmance by the appellate court. While Crim.R. 32.1 apparently enlarges the power of the trial court over its judgments without respect to the running of the court term, it does not confer upon the trial court the power to vacate a judgment which has been affirmed by the appellate court, for this action would affect the decision of the reviewing court, which is not within the power of the trial court to do. Thus, we find a total and complete want of jurisdiction by the trial court to grant the motion to withdraw appellee's plea of guilty and to proceed with a new trial.

*Id.* at 97-98.

6.

{¶ 17} Thirty years later, the Ohio Supreme Court reaffirmed its holding in *Special Prosecutors*. In *State v. Ketterer*, 2010-Ohio-3831, the Ohio Supreme Court considered, inter alia, the trial court's denial of the defendant's motion to withdraw his guilty pleas that he filed after his conviction was affirmed on appeal. In that case, Ketterer pleaded guilty to aggravated murder and other crimes. He was sentenced to death for the aggravated murder. The trial court also imposed a 22-year prison term for the noncapital offenses. *Id.* at ¶ 2. On direct appeal, Ketterer raised issues regarding whether his guilty pleas were knowing, intelligent, and voluntary. The Ohio Supreme Court found that they were. *State v. Ketterer*, 2006-Ohio-5283, ¶ 75-79. The court did, however, later vacate the noncapital sentences and remand the matter for resentencing. *Ketterer*, 2010-Ohio-3831, at ¶ 3.

{¶ 18} While the case was on remand for resentencing, Ketterer filed a Crim.R. 32.1 motion to withdraw his guilty pleas. The trial court denied his motion. *Id.* at ¶ 56, 58. Ketterer appealed again, arguing in part that the trial court erred in denying his motion to withdraw his guilty pleas. The Ohio Supreme Court affirmed, finding that it had considered in the first appeal the claims that Ketterer had raised on remand as a basis to withdraw his guilty pleas. Specifically, it had found "that Ketterer was adequately informed of his rights before pleading guilty; that his plea was knowingly, voluntarily, and intelligently made; and that his counsel was not ineffective in providing him advice on his guilty pleas." *Id.* at ¶ 60. The Ohio Supreme Court concluded, therefore, that "res judicata was a valid basis for rejecting these claims." *Id.*

7.

{¶ 19} Furthermore, the Ohio Supreme Court noted that the State also argued that the trial court lacked jurisdiction to vacate Ketterer's guilty pleas pursuant to *Special Prosecutors*. The court quoted the rule from *Special Prosecutors* that

> Crim.R. 32.1 does not vest jurisdiction in the trial court to maintain and determine a motion to withdraw the guilty plea subsequent to an appeal and an affirmance by the appellate court. While Crim.R. 32.1 apparently enlarges the power of the trial court over its judgments without respect to the running of the court term, it does not confer upon the trial court the power to vacate a judgment which has been affirmed by the appellate court, for this action would affect the decision of the reviewing court, which is not within the power of the trial court to do.

*Id.* at ¶ 61, quoting *Special Prosecutors*, 55 Ohio St.2d at 97-98. It then held,

> On appeal, this court affirmed Ketterer's convictions and death sentence. . . . Ketterer's appeal was later reopened and his case was remanded for the limited purpose of resentencing him on his noncapital offenses. . . . Under the authority of *Special Prosecutors*, the panel had no authority to consider Ketterer's motion to withdraw his guilty pleas, let alone grant him a new trial.

(Internal citations omitted.) *Id.* at ¶ 62.

{¶ 20} Approximately one year after *Ketterer*, the Ohio Supreme Court examined the application of the rule in *Special Prosecutors* to a post-appeal motion for new trial based on newly discovered evidence in *State v. Davis*, 2011-Ohio-5028.

{¶ 21} In that case, Roland Davis was convicted by a jury of multiple crimes, including aggravated murder. He was sentenced to death. The Ohio Supreme Court affirmed his convictions and death sentence in *State v. Davis*, 2008-Ohio-2. Thereafter, the trial court dismissed Davis's later petition for postconviction relief. The appellate

8.

court affirmed the dismissal, and the Ohio Supreme Court declined jurisdiction over a further appeal.

{¶ 22} While the appeals from the denial of his postconviction petition were pending, Davis filed a motion for leave to file a motion for a new trial based upon newly discovered evidence. The newly discovered evidence was the affidavit of a DNA expert, and he argued that his trial counsel was ineffective for failing to present a DNA expert to refute the State's expert witness. The trial court denied the motion, finding (1) that Davis was not unavoidably prevented from procuring the testimony within 120 days after trial and (2) that he failed to demonstrate that but for the unavailability of the evidence no reasonable factfinder would have found him guilty. *Davis*, 2011-Ohio-5028, at ¶ 7. On appeal, the appellate court affirmed on the basis that the trial court lacked jurisdiction to act on the defendant's motion for a new trial pursuant to *Special Prosecutors*. *Id.* at ¶ 8.

{¶ 23} The Ohio Supreme Court accepted Davis's discretionary appeal on the proposition of law that "When the issue to be decided by the trial court does not fall within the judgment on appeal, the trial court retains jurisdiction to decide the motion before it. Further, to meet due process, a trial court must be able to consider a motion for new trial based on newly discovered evidence even after an appeal has been taken. U.S. Const. amend. XIV." *Id.* at ¶ 9.[1]

---

[1] The Ohio Supreme Court later ordered the parties to brief the additional issue of "[W]hether the court of appeals had jurisdiction to consider the trial court's denial of Davis' motion for new trial based on newly discovered evidence under Section 2(B)(2)(c) and Section 3(B)(2), Article IV of the Ohio Constitution." *Davis* at ¶ 10.

9.

**{¶ 24}** In deciding that issue, the Ohio Supreme Court cited *State ex rel. Cordray v. Marshall*, 2009-Ohio-4986, ¶ 27-28, 42, in which it relied upon the law-of-the-case doctrine to hold that the trial court did not have jurisdiction to grant a posttrial motion that raised the same issues that had previously been rejected on appeal. The law-of-the-case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). "[It] is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Id.*

**{¶ 25}** Davis argued that under the law-of-the-case doctrine, the trial court should have been permitted to rule on his motion for a new trial because a reviewing court had never considered the DNA expert's affidavit during previous appeals. *Davis* at ¶ 31. He asserted that there would not have been a conflict between the trial court's exercise of jurisdiction over the motion for a new trial and the appellate courts' affirmances of his conviction and of the denial of postconviction relief because the issue to be decided was not "within the compass" of the appellate courts' judgments. *Id.* The State, in opposition, argued that Davis already raised the issue on direct appeal when he claimed that his trial counsel was ineffective in stipulating to the admissibility of DNA evidence. Ultimately, the Ohio Supreme Court agreed with Davis that the issue of whether the DNA expert's affidavit warranted a new trial could not have been raised on direct appeal

10.

because it rested upon evidence not considered by the trial court and not part of the record. *Id.* at ¶ 34.

{¶ 26} The State then argued that *Special Prosecutors* only barred the trial court's consideration of Davis's motion for a new trial because the Ohio Supreme Court had not remanded his case to the trial court. It emphasized the language from *Special Prosecutors* that "'the trial court lost its jurisdiction when the appeal was taken, and, *absent a remand*, it did not regain jurisdiction subsequent to the Court of Appeals' decision.' (Emphasis added.)." *Id.* at ¶ 35, quoting *Special Prosecutors*, 55 Ohio St.2d at 97. It thus argued that Davis had a remedy by filing a motion with the Ohio Supreme Court showing that his motion for a new trial has merit and therefore seeking a remand of his case to the trial court for it to consider the new-trial motion. *Id.*

{¶ 27} The Ohio Supreme Court rejected the State's proposed remedy as "cumbersome." *Id.* at ¶ 36. It noted that the trial court is "better equipped . . . to consider testimony and other evidence matters alleged to be newly discovered," and is capable of deciding whether the newly discovered evidence involves matters "within the compass" of the previous appellate decisions. *Id.* It then further commented,

> We did not decide *Special Prosecutors* based on the law-of-the-case doctrine. However, that doctrine would not prevent the trial court from considering the effect of previous decisions on Davis's newly-discovered-evidence claim. We take this opportunity to specify that the holding in *Special Prosecutors* does not bar the trial court's jurisdiction over posttrial motions permitted by the Ohio Rules of Criminal Procedure. These motions provide a safety net for defendants who have reasonable grounds to challenge their convictions and sentences. The trial court acts as the gatekeeper for these motions and, using its discretion, can limit the litigation to viable claims only.

11.

*Id.* at ¶ 37. It therefore held that "a trial court retains jurisdiction to decide a motion for a new trial based on newly discovered evidence when the specific issue has not been decided upon direct appeal." *Id.*

{¶ 28} Following *Davis*, Ohio appellate courts largely continued to apply the rule from *Special Prosecutors*. *See, e.g., State v. Ramey*, 2019-Ohio-398, ¶ 14-16 (2d Dist.); *State v. Childers*, 2018-Ohio-26, ¶ 14 (4th Dist.); *State v. Hammock*, 2019-Ohio-127, ¶ 16 (5th Dist.); *State v. Grant*, 2019-Ohio-796, ¶ 14 (8th Dist.); *State v. Collins*, 2019-Ohio-755, ¶ 11 (12th Dist.); *but see State v. Staffrey*, 2011-Ohio-5760, ¶ 36 (7th Dist.); *State v. West*, 2017-Ohio-5596, ¶ 20 (1st Dist.).

{¶ 29} Subsequently, the Ohio Supreme Court decided *State ex rel. Davis v. Janas*, 2020-Ohio-1462, in a per curiam opinion, in which it reversed the dismissal of a complaint for a writ of mandamus. In that case, Ian Davis was convicted of aggravated murder in 1994 and sentenced to life in prison with parole eligibility after 20 years. That sentence was ordered to be served consecutively to an indeterminate prison sentence of 8 to 15 years imposed in a separate case. Davis directly appealed his conviction and sentence, and the court of appeals affirmed in 1996. In 2018, Davis learned from the Adult Parole Authority that the trial court had entered a nunc pro tunc entry in 1999 stating that his sentence for aggravated murder was "20 *full* years to life." (Emphasis sic.) *Id.* at ¶ 3. Unlike a sentence of 20 years to life, a sentence for 20 full years to life could not be reduced by earning certain types of credit, and it was available only where the defendant was convicted of aggravated murder with an aggravating circumstance. *Id.* at ¶ 7-8. Davis then filed a complaint for a writ of mandamus, arguing that the nunc pro tunc

12.

entry erroneously increased his sentence and asserting that the trial court patently and unambiguously lacked jurisdiction to issue the entry after the court of appeals had affirmed his sentence. *Id.* at ¶ 4.

{¶ 30} In reversing the dismissal of the mandamus petition, the Ohio Supreme Court stated as part of its analysis that,

> Generally, a trial court loses jurisdiction to modify its judgment once that judgment has been affirmed on appeal. *See State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 378 N.E.2d 162 (1978). Relief from final judgments in criminal cases is confined to the procedures authorized by statute or rule. [*See, e.g.*, Crim.R. 29(C) (motion for acquittal after verdict or discharge of the jury); Crim.R. 32.1 (motion to withdraw guilty plea); R.C. 2951.08 and Crim.R. 32.3 (probation-revocation proceedings); R.C. 2953.03 and Crim.R. 33 (motion for a new trial); Crim.R. 34 (motion in arrest of judgment); R.C. 2953.21 and Crim.R. 35 (postconviction relief); R.C. 2929.19 (petition for early release); R.C. 2929.20 (judicial release); R.C. 2929.191 (correction of judgment to include postrelease-control-supervision notification); Crim.R. 36 (motion to correct clerical mistakes).] *See State v. Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, ¶ 37 ("*Special Prosecutors* does not bar the trial court's jurisdiction over posttrial motions permitted by the Ohio Rules of Criminal Procedure"). Outside of those procedures, there is no statute or criminal rule permitting a trial court to sua sponte substantively change a defendant's sentence after that sentence has been affirmed on direct appeal.

(Footnote included in the body of the quote in brackets.) *Id.* at ¶ 11.

{¶ 31} Specific to that case, it noted that the trial court invoked Crim.R. 36, which allows a court to correct clerical mistakes at any time. The Ohio Supreme Court, however, found sufficient facts were alleged to show that the trial court did not merely correct a clerical mistake but rather changed Davis's sentence. In particular, it found that the complaint attached the original 1994 sentencing entry that showed Davis was convicted of aggravated murder without any aggravating circumstances. *Id.* at ¶ 15. It

13.

also included a partial transcript from the sentencing hearing, which demonstrated that the trial court imposed a sentence of life in prison with parole eligibility after 20 years, not after 20 full years. *Id.* The Ohio Supreme Court, therefore, reversed the dismissal of the writ of mandamus because Davis's complaint "sufficiently alleges that the judge patently and unambiguously lacked jurisdiction to change Davis's sentence after the sentence had been affirmed on appeal." *Id.* at ¶ 1.

{¶ 32} Since *Janas*, a small number of Ohio appellate courts have held that the longstanding rule in *Special Prosecutors* is no longer good law. *See State v. Walton*, 2023-Ohio-2879, ¶ 18-21 (8th Dist.); *State v. Enyart*, 2023-Ohio-3373, ¶ 26 (10th Dist.). The courts that have done so have relied upon the statement in *Davis*, 2011-Ohio-5028, at ¶ 37, that "the holding in *Special Prosecutors* does not bar the trial court's jurisdiction over posttrial motions permitted by the Ohio Rules of Criminal Procedure."[2] They also rely on *Janas's* citation to *Davis* for that same statement, and its specific inclusion of

---

[2] The concurrence also cites *State v. Straley*, 2019-Ohio-5206, as conclusively repudiating *Special Prosecutors*. *Straley*, however, did not address the jurisdictional issue. It instead answered the question "whether a defendant who pleads guilty suffers a manifest injustice under Crim.R. 32.1 if the trial court fails to tell the defendant during his plea colloquy that a portion of his agreed-upon sentence is mandatory." *Id.* at ¶ 1. *Straley*, therefore, did not cite *Special Prosecutors* or *Davis*, and although it did passingly cite *Ketterer*, it only did so on the issue of res judicata. *See Straley* at ¶ 27.

As such, the concurrence relies on *Straley* as implicitly overruling *Special Prosecutors*. This has been recognized as clear error by the United States Supreme Court. "'If a precedent of this Court has direct application in a case,' . . . a lower court 'should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 136 (2023), quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). "This is true even if the lower court thinks the precedent is in tension with 'some other line of decisions.'" *Id.*, quoting *Rodriguez de Quijas* at 484.

14.

Crim.R. 32.1 in its footnote listing various criminal rules and statutes providing for relief from a final judgment of conviction. Their conclusion is not wholly unreasonable. This court diverges from that conclusion, however, because we do not accept that the Ohio Supreme Court overruled its holding in *Special Prosecutors* sub silentio. Rather, we believe that the Ohio Supreme Court's decisions can be read harmoniously.

{¶ 33} Notably, neither *Davis* nor *Janas* expressly overruled *Special Prosecutors*. As such, the holding in *Special Prosecutors* should not be lightly cast aside. "Stare decisis is the bedrock of the American judicial system. Well-reasoned opinions become controlling precedent, thus creating stability and predictability in our legal system. It is only with great solemnity and with the assurance that the newly chosen course for the law is a significant improvement over the current course that we should depart from precedent." *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 1. "[A] prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it." *Id.* at ¶ 48.

{¶ 34} In *Special Prosecutors*, the Ohio Supreme Court started with the general premise that "the trial court loses jurisdiction to take action in a cause after an appeal has been taken and decided." *Special Prosecutors*, 55 Ohio St.2d at 97. It then noted that a trial court retains jurisdiction "over issues not inconsistent with that of the appellate court to review, affirm, modify or reverse the appealed judgment, such as the collateral issues like contempt, appointment of a receiver and injunction." *Id.* It found in that case,

15.

however, that the trial court's granting of the motion to withdraw the guilty plea was inconsistent with the court of appeals' judgment affirming the conviction premised upon the guilty plea. *Id.* Thus, it concluded that "the trial court lost its jurisdiction when the appeal was taken, and, absent a remand, it did not regain jurisdiction subsequent to the Court of Appeals' decision." *Id.*

{¶ 35} The Ohio Supreme Court further reasoned that "Crim.R. 32.1 does not vest jurisdiction in the trial court to maintain and determine a motion to withdraw the guilty plea subsequent to an appeal and an affirmance by the appellate court." *Id.* That rule "does not confer upon the trial court the power to vacate a judgment which has been affirmed by the appellate court, for this action would affect the decision of the reviewing court, which is not within the power of the trial court to do." *Id.* at 98.

{¶ 36} Summarized, *Special Prosecutors* stands for the proposition that a trial court loses jurisdiction to take action in a case once an appeal has been taken and decided, unless the action pertains to an issue that is not inconsistent with the jurisdiction of the appellate court to review, affirm, modify, or reverse the appealed judgment. And a Crim.R. 32.1 motion to withdraw a guilty plea is inconsistent with the jurisdiction of the appellate court that affirmed a conviction premised upon that plea.

{¶ 37} *Davis* did not change the holding in *Special Prosecutors*. Although it broadly stated that "the holding in *Special Prosecutors* does not bar the trial court's jurisdiction over posttrial motions permitted by the Ohio Rules of Criminal Procedure," the specific holding in *Davis* is much narrower: "a trial court retains jurisdiction to

16.

decide a motion for a new trial based on newly discovered evidence when the specific issue has not been decided upon direct appeal." *Davis*, 2011-Ohio-5028, at ¶ 37.

{¶ 38} Importantly, when *Davis* made the broad statement that *Special Prosecutors* does not bar the trial court's jurisdiction over posttrial motions, it did so in the context of a response to the State's argument that *Special Prosecutors* was only a conditional bar to the trial court's jurisdiction and that Davis had a remedy by filing a motion with the Ohio Supreme Court showing that his motion for a new trial had merit and seeking a remand of his case to the trial court to consider that new-trial motion. Viewing the trial court as (1) better equipped to consider testimony and evidence alleged to be newly discovered and (2) capable of determining whether that evidence involved matters "within the compass" of the appellate court's decision, it directed that those motions should be filed in the trial court. Under *Davis*, a case does not have to be remanded from the appellate court for a trial court to have jurisdiction to receive a Crim.R. 33 motion for a new trial based on newly discovered evidence, or any other motion permitted by the Ohio Rules of Criminal Procedure, including a Crim.R. 32.1 motion to withdraw a guilty plea.

{¶ 39} The question, however, of where a motion should be filed is separate from the question of what can be done with the motion. Note that *Davis* holds that "a trial court retains jurisdiction to decide a motion for a new trial based on newly discovered evidence *when the specific issue has not been decided upon direct appeal.*" (Emphasis added.) *Davis* at ¶ 37. Stated in the negative, a trial court does not have jurisdiction to decide a motion for new trial based on newly discovered evidence where the appellate

17.

court has already decided the issue. *See Marshall*, 2009-Ohio-4986, at ¶ 36 (trial court patently and unambiguously lacked jurisdiction to grant relief from conviction on the same grounds that had been previously rejected on appeal). This is consistent with *Special Prosecutors*; a trial court does not have jurisdiction to consider a motion to withdraw a guilty plea where the appellate court affirmed a conviction premised upon that plea. In both cases, the trial court does not have jurisdiction where the issue is "within the compass" of the appellate court's decision.

{¶ 40} This principle is reinforced in the Ohio Supreme Court's decision in *Janas*. In that case, the trial court invoked Crim.R. 36 to enter a "nunc pro tunc" entry to correct a clerical mistake in the sentencing entry, which it has the authority to do. The problem in *Janas* was that the evidence demonstrated that the trial court may not have merely corrected a clerical mistake. Instead, it may have substantively changed the defendant's sentence. If indeed the facts showed that the trial court substantively changed the sentence, the Ohio Supreme Court held that it would have done so with a patent and unambiguous lack of jurisdiction because that sentence had been affirmed on appeal. *Janas*, 2020-Ohio-1462, at ¶ 15-16.

{¶ 41} Reading *Special Prosecutors*, *Ketterer*, *Davis*, and *Janas* together reveals the consistent application of the general rule that a trial court loses jurisdiction to take action in a case once an appeal has been taken and decided, unless the action pertains to an issue that is not inconsistent with the jurisdiction of the appellate court to review, affirm, modify, or reverse the appealed judgment. In *Special Prosecutors* (Crim.R. 32.1 motion to withdraw guilty plea), *Ketterer* (Crim.R. 32.1 motion to withdraw guilty plea),

18.

and *Janas* (modification of sentence), the action was inconsistent, and the Ohio Supreme Court held that the trial court lacked jurisdiction. In *Davis* (Crim.R. 33 motion for new trial based on newly discovered evidence), the action was not inconsistent as it was not "within the compass" of the appellate court's decision, and the Ohio Supreme Court held that the trial court retained jurisdiction to consider it.

{¶ 42} This leads to the final question of whether a Crim.R. 32.1 motion to withdraw a guilty plea is always inconsistent with the jurisdiction of the appellate court to affirm the conviction premised upon that plea. The Fifth District in *State v. Harris*, 2024-Ohio-2993, ¶ 21-24 (5th Dist.), and the Ninth District in *State v. Cobb*, 2024-Ohio-916, ¶ 15 (9th Dist.), have determined that it is not. They apply *Davis* to conclude that the jurisdictional bar in *Special Prosecutors* does not control where the issues raised in the motion to withdraw the guilty plea were not decided in the direct appeal, as occurred in this case. This court comes to the opposite conclusion for two reasons.

{¶ 43} First, as discussed above, *Special Prosecutors* has not been overruled. In that decision, even though the direct appeal determined that the guilty plea was knowing, intelligent, and voluntary (as was also the case in *Ketterer*), that fact was not included in the Ohio Supreme Court's reasoning or its holding. Instead, the Ohio Supreme Court blanketly held that "Crim.R. 32.1 does not vest jurisdiction in the trial court to maintain and determine a motion to withdraw the guilty plea subsequent to an appeal and an affirmance by the appellate court. . . . [I]t does not confer upon the trial court the power to vacate a judgment which has been affirmed by the appellate court, for this action would affect the decision of the reviewing court, which is not within the power of the

19.

trial court to do." *Special Prosecutors*, 55 Ohio St.2d at 97-98. Because the Ohio Supreme Court did not limit its holding to circumstances where the knowing, intelligent, and voluntary nature of the plea was decided on direct appeal, this court also will not apply such a limitation.

{¶ 44} Second, the very nature of a guilty plea renders it within the compass of the appellate court's decision affirming the conviction premised upon that plea.

> [A] judgment of conviction resting on a plea of guilty is justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind. The plea usually subsumes both elements, and justifiably so, even though there is no separate, express admission by the defendant that he committed the particular acts claimed to constitute the crime charged in the indictment.

*North Carolina v. Alford*, 400 U.S. 25, 32 (1970); *State v. Griggs*, 2004-Ohio-4415, ¶ 13. A guilty plea obviates the need for a trial and the production of evidence. Instead, the conviction is supported by the defendant's complete admission of guilt. Any decision by an appellate court affirming the conviction necessarily relies upon the guilty plea, and a subsequent attempt to withdraw that plea would be inconsistent with the appellate court's jurisdiction in the same way that the trial court loses jurisdiction to modify a criminal sentence that has been affirmed on appeal.[3]

---

[3] This court recognizes, but leaves for another day as it is not relevant to this case, the potential that a conviction premised upon an *Alford* plea may be distinguishable.

20.

**{¶ 45}** In sum, pursuant to the rule applied in *Special Prosecutors*, *Ketterer*, *Davis*, and *Janas*, the trial court lacked jurisdiction to consider O'Brien's post-affirmance Crim.R. 32.1 motion to withdraw his guilty plea. The trial court, therefore, correctly denied his motion, albeit for different reasons, and "this court will not reverse a trial court decision that 'achieves the right result for the wrong reason, because such an error is not prejudicial.'" *State ex rel. Sommers v. Perkins Local Schools Bd. of Edn.*, 2017-Ohio-7991, ¶ 26 (6th Dist.), quoting *Toledo v. Schmiedebusch*, 2011-Ohio-284, ¶ 37 (6th Dist.).

**{¶ 46}** Accordingly, O'Brien's assignment of error is not well-taken.

## IV. Certify Conflict

**{¶ 47}** As discussed above, this conclusion and analysis on O'Brien's assignment of error directly conflicts with the Eighth District's decision in *State v. Walton*, 2023-Ohio-2879, ¶ 18-21 (8th Dist.), and the Tenth District's decision in *State v. Enyart*, 2023-Ohio-3373, ¶ 26 (10th Dist.). This court, therefore, pursuant to Article IV, Section 3(B)(4) of the Ohio Constitution sua sponte certifies a conflict to the Supreme Court of Ohio on the following question:

> Whether the rule in *Special Prosecutors* continues to apply such that a trial court is without jurisdiction to consider a Crim.R. 32.1 post-sentence motion to withdraw a guilty plea that is filed after the conviction has been affirmed on appeal?

## V. Conclusion

**{¶ 48}** For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is affirmed. This court certifies a conflict to the Ohio Supreme Court and

21.

directs the parties to Sup.R.Pract. 8.01 for instructions on how to proceed. O'Brien is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.

_____
JUDGE

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

Christine E. Mayle, J.
CONCURS AND WRITES
SEPARATELY.

_____
JUDGE

**MAYLE, J., concurring.**

**{¶ 49}** While I agree with the result in this case, I disagree with the foregoing analysis. The majority erroneously concludes that "the trial court lacked jurisdiction to consider O'Brien's post-affirmance Crim.R. 32.1 motion to withdraw his guilty plea" due to the jurisdictional limitation articulated in *State ex rel Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94 (1978). *Special Prosecutors*, however, is no longer controlling in light of *State v. Davis*, 2011-Ohio-5028, *State v. Straley*, 2019-Ohio-5206, and *State ex rel. Davis v. Janas*, 2020-Ohio-1462. These decisions make clear that

22.

the trial court had jurisdiction to consider O'Brien's post-affirmance Crim.R. 32.1 motion.

{¶ 50} Ultimately, I concur with the majority's judgment affirming the trial court's denial of the motion, but for a different reason—that is, O'Brien's motion raises issues that were or could have been considered on direct appeal. Therefore, in light of *Davis, Straley,* and *Janas*, I believe that the motion is barred by res judicata—not a lack of jurisdiction.

## I. The trial court had jurisdiction over the Crim.R. 32.1 motion.

{¶ 51} Almost half a century ago, the Ohio Supreme Court ruled that "Crim.R. 32.1 does not vest jurisdiction in the trial court to maintain and determine a motion to withdraw the guilty plea subsequent to an appeal and an affirmance by the appellate court." *Special Prosecutors* at 97. It reasoned that the trial court lacked jurisdiction because "[t]he judgment of the reviewing court is controlling upon the lower court as to all matters within the compass of the judgment." *Id.* The Supreme Court emphasized that Crim.R. 32.1 therefore "does not confer upon the trial court the power to vacate a judgment which has been affirmed by the appellate court," which results in "a total and complete want of jurisdiction by the trial court" to review the motion. *Id.* at 98.

{¶ 52} *Special Prosecutors* remained undisturbed for several decades. In 2011, the Supreme Court clarified that "the holding in *Special Prosecutors* does not bar the trial court's jurisdiction over posttrial motions permitted by the Ohio Rules of Criminal Procedure" and recognized that "[t]hese motions provide a safety net for defendants who have reasonable grounds to challenge their convictions and sentences." *Davis*, 2011-23.

Ohio-5028, at ¶ 37. The court reaffirmed this principle almost a decade later in *Janas*, emphasizing that "[r]elief from final judgments in criminal cases is confined to the procedures authorized by statute or rule." *Janas*, 2020-Ohio-1462, at ¶ 11. The court held that "[o]utside of *those procedures*" there is no mechanism by which a trial court can "substantively change a defendant's sentence *after that sentence has been affirmed on direct appeal*." (Emphasis added). *Id.* Significantly, the court specifically identified motions to withdraw guilty pleas under Crim.R. 32.1 as one such "procedure" under Ohio law. *Id.* at fn. 3.

{¶ 53} These pronouncements are in direct conflict with *Special Prosecutors*. On the one hand, *Janas* expressly recognized that Crim.R. 32.1 permits a trial court to substantively change a defendant's sentence after that sentence has been affirmed on appeal. *See id*. at ¶ 11, fn. 3. *Special Prosecutors*, on the other hand, held that Crim.R. 32.1 does not empower a trial court to vacate a judgment that has been affirmed on appeal. *Special Prosecutors* at 98. "Where Supreme Court precedent conflicts, appellate courts are bound to follow the Supreme Court's most recent decision." *Kromer v. Arthritis Foundation, Inc.*, 2025-Ohio-661, ¶ 34 (following an Ohio Supreme Court decision that "did not distinguish or even mention" an earlier decision that contradicted its holding.)

{¶ 54} Following this well-grounded principle, several appellate courts have correctly recognized that "*Special Prosecutors* can no longer be construed as divesting a trial court of its continuing jurisdiction over post-sentence motions that are permitted by the Ohio Rules of Criminal Procedure or Ohio law." *State v. Enyart*, 2023-Ohio-3373, ¶

24.

26 (10th Dist.). *See also State v. Walton*, 2023-Ohio-2879, ¶ 19-21 (8th Dist.) (recognizing that the Ohio Supreme Court has "reversed course" since *Special Prosecutors*, and "[i]n light of *Davis* and *Janas*, the trial court did have jurisdiction to consider the merits of Walton's motion to withdraw his plea."); *State v. Vasquez*, 2024-Ohio-2947, ¶ 27 (6th Dist.) (Mayle, J. concurring) (criticizing the majority for failing to "explicitly acknowledge that we have mistakenly continued to cite *Special Prosecutors* for a proposition of law that was abrogated by *Roland Davis* and *Janas*.").[4]

{¶ 55} Any lingering doubt that *Special Prosecutors* is no longer good law is dispelled by *State v. Straley*, 2019-Ohio-5206. In *Straley*, the Supreme Court considered whether a defendant who pleads guilty suffers a manifest injustice under Crim.R. 32.1 if the trial court fails to tell the defendant during his plea colloquy that a portion of his agreed-upon sentence is mandatory. *Id*. at ¶ 1. Importantly, the court analyzed the merits of a Crim.R. 32.1 motion to withdraw guilty plea that was filed several years after the underlying conviction was affirmed on direct appeal. The Supreme Court concluded that the trial court correctly denied the motion on its merits because the defendant "did not show that any error caused him to forgo trial and plead guilty instead." *Id.* at ¶ 17. The court then found that the Crim.R. 32.1 motion was precluded by res judicata. The court noted that, although Straley had not raised the same exact arguments on his direct appeal, "res judicata generally bars a defendant from raising claims in a Crim.R. 32.1

---

[4] I agree with the majority's certification of a conflict with *Enyart* and *Walton*.

25.

postsentencing motion to withdraw a guilty plea that he raised or could have raised on direct appeal." *Id.* at ¶ 23, citing *State v. Ketterer*, 2010-Ohio-3831, ¶ 59.[5]

{¶ 56} By its reasoning, *Straley* conclusively repudiates *Special Prosecutors*. In *Straley*, the Supreme Court—like the trial court and appellate court below it—substantively analyzed a Crim.R. 32.1 motion to withdraw guilty plea that was filed after the underlying conviction was affirmed on direct appeal. *See generally id*. This analysis would have been barred—and the lower court rulings would have been void for lack of jurisdiction—if the jurisdictional limitation of *Special Prosecutors* still controlled.

{¶ 57} Read together, *Davis, Janas,* and *Straley* make clear that a trial court retains jurisdiction to consider a post-affirmance Crim.R. 32.1 motion to withdraw a guilty plea. This makes good sense. A trial court's authority to consider that motion does not undermine appellate jurisdiction because the Crim.R. 32.1 motion cannot raise any matters that were or could have been raised on direct appeal. *Id*. at ¶ 23. A motion to withdraw guilty plea that is arguably within (or could have been within) the scope of a prior appeal is properly barred by res judicata, not a lack of jurisdiction. *Id*. In that respect, the doctrine of res judicata ensures that the appellate judgment remains "controlling upon the lower court as to *all matters within the compass* of the judgment." (Emphasis added.) *Special Prosecutors*, 55 Ohio St.2d at 97. A trial court cannot

---

[5] Justice (now Chief Justice) Kennedy wrote a separate opinion—with which I agree—that concurs in judgment but explains that "the majority opinion unnecessarily considers the merits of arguments that are barred by res judicata." *Straley* at ¶ 44 (Kennedy J., concurring in judgment only).

26.

determine whether any "matters" raised in a Crim.R. 32.1 motion fall within that "compass" unless it first has jurisdiction to consider the motion.

{¶ 58} It is important to remember that Crim.R. 32.1 exists to allow trial courts to correct rare and extraordinary instances of "manifest injustice"—which, by their very nature, could not have been raised on direct appeal. For example, a guilty plea induced by what is later revealed to be fabricated DNA evidence would amount to a manifest injustice. *State v. Allen*, 2025-Ohio-5555, ¶ 35-40 (6th Dist.) (reversing and remanding for evidentiary hearing based on a plausible claim of manifest injustice implicating the defendant's "constitutional right to be free from prosecution based on deliberately fabricated evidence."). Simply put, it would undermine the basic integrity of the judicial system to hold that a trial court lacks the authority to review a defendant's Crim.R. 32.1 motion merely because he previously pursued an appeal that did not—and could not have—addressed a fundamental miscarriage of justice that has since come to light. Fortunately, through *Davis*, *Straley*, and *Janas*, it is clear that the Ohio Supreme Court has moved away from the jurisdictional limitation of *Special Prosecutors* to ensure that defendants retain this important "safety net," *Davis*, 2011-Ohio-5028, at ¶ 37, even after direct appeal.

{¶ 59} For all these reasons, I would find that the trial court had jurisdiction to review O'Brien's motion to withdraw guilty plea.

## II. The trial court properly denied the Crim.R. 32.1 motion.

{¶ 60} Because the trial court had jurisdiction over the motion, it is necessary to review the trial court's determination on the substance of O'Brien's motion.

27.

{¶ 61} In his motion, O'Brien argued that trial counsel was ineffective for advising him to plead guilty to a crime that he was not guilty of. He claimed that his guilty plea was a miscarriage of justice because the prosecution would not have been able to prove that he was guilty of engaging in a pattern of corrupt activity because it could not prove the essential element of "enterprise."[6] The trial court found that O'Brien's claims were barred by res judicata *and* that O'Brien failed to show manifest injustice.

{¶ 62} To support his sole assignment of error—that the trial court erred in denying his motion to withdraw his guilty plea without an evidentiary hearing—O'Brien challenges both findings of the trial court.

{¶ 63} Crim.R. 32.1 governs the withdrawal of a plea of guilty or no contest and provides that such motion "may be made only before sentence is imposed" however, "a trial court may grant a defendant's postsentence motion to withdraw a guilty plea to 'correct a manifest injustice.'" *Straley*, 2019-Ohio-5206, at ¶ 13, citing Crim.R. 32.1. A "'manifest injustice' is a clear or openly unjust act, … and relates to a fundamental flaw

---

[6] R.C. 2923.32(A)(1) provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful deb." A person in violation of this is guilty of engaging in pattern of corrupt activity. R.C. 2923.31(E) establishes that a "pattern of corrupt activity" requires proof of "two or more incidents of corrupt activity … that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." An "enterprise" is broadly defined to include "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C).

in the plea proceedings resulting in a miscarriage of justice." (Citations omitted.) *Id.* at ¶ 14. The term "'has been variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases.'" *Id.,* quoting *State v. Smith*, 49 Ohio St.2d 261, 264 (1977). "A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *Id.,* quoting *Smith* at paragraph one of the syllabus.

{¶ 64} However, "res judicata bars a defendant from raising claims in a Crim.R. 32.1 postsentencing motion to withdraw a guilty plea that he raised or could have raised on direct appeal." *Straley* at ¶ 15, citing *Ketterer*, 2010-Ohio-3831, at ¶ 59. Following his conviction, O'Brien filed a direct appeal in which he challenged the trial court's imposition of restitution and consecutive sentences. We affirmed. *See State v O'Brien*, 2021-Ohio-4037 (6th Dist.). At that time, O'Brien raised one ineffective assistance of counsel claim regarding counsel's stipulation to the amount of restitution.

{¶ 65} Approximately ten months later, O'Brien filed a motion to reopen his appeal. He claimed that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for allowing him to plead guilty even though the State could not establish the "enterprise" element of engaging in a pattern of corrupt activity. We denied the motion to reopen because it was filed seven months late, and O'Brien failed to establish good cause for his untimely filing. We did not reach the merits of his claim.

{¶ 66} O'Brien then filed the motion to withdraw his guilty plea that is the subject of this appeal. In his motion and his current appeal, O'Brien claims that the ineffective assistance of his trial counsel caused his guilty plea to be unknowing, unintelligent, and

29.

involuntary. To support this claim, O'Brien argues that his trial counsel should have advised him against pleading guilty because the state "failed to introduce sufficient evidence to demonstrate [his] association with an enterprise," which is an essential element of engaging in a pattern of corrupt activity. He maintains that counsel should have realized—based on information in the PSI, combined with statements by the prosecutor at the plea hearing and sentencing hearing—that the State would not have been able to prove the "enterprise" element at trial and therefore by failing to properly advise him of this, O'Brien argues that counsel "led to him being deprived of a trial."

{¶ 67} This claim is barred by res judicata. It is well-established that claims of ineffective assistance of counsel that appear on the face of the record—like this one— cannot be raised through a Crim.R. 32.1 motion to withdraw guilty pleas because they could have been brought on direct appeal. *See e.g., State v. Cain*, 2021-Ohio-1841, ¶ 12 (6th Dist.) (finding that claims made in defendant's motion to withdraw his guilty pleas— which included assertions that his pleas were not knowing, intelligent, or voluntary, and that he was coerced into entering the guilty pleas because of ineffective assistance of counsel—were barred by res judicata because they were not raised on direct appeal); *see also State v. Thomson*, 2019-Ohio-3021, (6th Dist.); *State v. Johnson*, 2012-Ohio-1400, (6th Dist.); *State v. Thomson*, 2006-Ohio-1224 (6th Dist.); and *State v. Reznickcheck*, 2004-Ohio-4801 (6th Dist.).

{¶ 68} O'Brien argues that if res judicata applies, this court should disregard its application to avoid a manifest injustice. Citing *AJZ's Hauling, L.L.C. v. TruNorth Warranty Programs of N. Am.*, 2023-Ohio-3097, ¶ 18, O'Brien claims that it would be

30.

manifestly unjust to preclude his Crim.R. 32.1 motion because he "tried to reopen his appeal to assert this exact assignment of error regarding his guilty plea, but this Court rejected the motion as untimely."

{¶ 69} In *AJZ's Hauling*, the Supreme Court of Ohio recognized that an exception to res judicata may exist in "extraordinary situations" where its application would defeat the ends of fundamental fairness and justice. *Id.* It also acknowledged, however, that courts have yet to apply this so-called exception, and the exception does not apply if "the parties had a full and fair opportunity to litigate the issue in the first instance." *Id.* at ¶ 19. Here, O'Brien had a full and fair opportunity to litigate this issue on his direct appeal, as demonstrated by the sampling of Ohio cases, cited above, that applied res judicata to Crim.R. 32.1 motions under similar circumstances. Moreover, O'Brien's unsuccessful effort to raise the same issue through an untimely motion to reopen—unsupported by any showing of good cause for the delay—is not an "extraordinary circumstance" that undermines the fundamental fairness of applying res judicata in this case.

{¶ 70} For these reasons, I would hold that the trial court did not err in finding that O'Brien's claims could have been raised on direct appeal and are therefore subject to res judicata.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.